FIRST NATIONAL BANK OF GREENWOOD, APPELLEE, V.
THOMAS REECE ET AL., APPELLANTS.

FILED MARCH 19, 1902.  No. 10,420.

Commissioner's opinion, Department No. 3. ·

1. **Evidence.** Evidence examined, and *held* sufficient to support a finding that a conveyance from a father to a son was fraudulent.

2. **Fraudulent Conveyance:** HOMESTEAD. Where a conveyance of premises occupied as a homestead is set aside as fraudulent as to creditors, the homestead interest of the grantor will be protected as if such conveyance had not been made. *Stubendorf v. Hoffman*, 23 Nebr., 360.

3. **Homestead:** EXEMPTION: DEBTS CREATED BEFORE DEATH OF WIFE. Section 17 of the homestead act exempts to the owner of the fee the homestead premises against all debts existing or created previous to or at the time of the death of his wife, even though he may no longer be the head of a family.

APPEAL from the district court for Cass county. Heard below before RAMSEY, J. *Reversed.*

*Allen Beeson, Jesse L. Root* and *Samuel M. Chapman,* for appellants.

*C. S. Polk* and *Stephen B. Pound, contra.*

DUFFIE, C.

This is a creditors' bill to subject to the payment of certain judgments held by the plaintiff the west half of the northwest quarter of section 26, and the east half of the northeast quarter of section 27, township 12, range 9 east of the 6th P. M. as the property of the defendant, Thomas Reece. Thomas Reece and his wife moved onto the land in 1884, the wife holding title. In the year 1890 she conveyed the land to one of her sons, and he, in turn, conveyed it to his father, Thomas Reece. While the record is not clear that this conveyance to the son was for the purpose of placing the title in the name of his father, we infer that such was the case, and that the son never had any

real interest in the property. Reece and his wife continued to occupy the property until the summer of 1890, when they removed to an adjoining farm owned by another son, and rented the home farm to this son. The purpose of such removal, as shown by the evidence, was to better provide for Mrs. Reece, who was sick and not expected to recover, and the son's house was better and more comfortable than the house on the home farm. Mrs. Reece died in the spring of 1891, and Thomas Reece then returned to the farm and boarded with his son. The value of the farm, as shown by the evidence, was from $6,400 to $8,000, and it was incumbered by mortgages to the amount of $3,500. Reece was also indebted to the appellant on unsecured claims to the amount of about $2,350. About August 15, 1896, Thomas Reece executed a warranty deed conveying the farm to his son Philip for the expressed consideration of $6,400. In the deed, Philip agreed to assume and pay the mortgages upon the place, and executed to his father five promissory notes, amounting in the aggregate to $2,900, payable in one, two, three, four and five years, for the balance of the consideration. At the time of this conveyance, Philip Reece, the son, was residing in Montana, and the negotiations for the sale of the farm, if any really took place, were by letters passing between them, none of which appear in the record before us. The plaintiff, the First National Bank of Greenwood, shortly after the conveyance to Philip Reece, reduced its claims to judgment, and had execution issue thereon; and the sheriff's return thereon recites that "after diligent search, I find no goods and chattels whereon to levy belonging to either of the within named defendants; I therefore levied the same on the 24th day of May, 1897, at 11:30 A. M. on the west one-half ($\frac{1}{2}$) of the northwest quarter ($\frac{1}{4}$) of section twenty-six (26), and the east one-half ($\frac{1}{2}$) of the northeast quarter ($\frac{1}{4}$) of section twenty-seven (27), township twelve (12), range nine (9), east of the 6th P. M. in Cass county, Nebraska." The petition alleges that the conveyance made to Philip Reece by his father was without consideration, and for the purpose

of hindering, delaying and defrauding the creditors; that by reason of said conveyance the land can not be sold on execution, or if sold would not bring a sufficient sum to satisfy the claim,—and asks that said conveyance may be set aside and made subject to the payment of the plaintiff's judgments. The answer of the defendants, while denying any fraud in the conveyance of the property, also alleges that, at the time of the conveyance, Thomas Reece had a homestead interest in the farm; and they ask that the plaintiff's petition may be dismissed, or that, in case the court should find for the plaintiff upon the question of the bona fides of the conveyance, that $2,000 in value of said premises, free and clear from all liens, and exclusive and in addition to the two mortgages thereon, be decreed to be the property of the defendants. A decree was entered as prayed in the petition and from this decree the defendants have appealed to this court.

We think the evidence was amply sufficient to uphold the finding of the district court that the defendant, Thomas Reece, was insolvent, and that the conveyance made to his son Philip was fraudulent as to creditors. It would serve no useful purpose to review at length the evidence on these questions. Suffice to say that the debts due the plaintiff were long past due, and the defendant could not pay them in the usual course of business, as they matured. Judgments were entered thereon and the sheriff's return made on the executions issued show that he could find no property of Thomas Reece out of which to satisfy the judgments, save this farm, the legal title to which stood in the name of Philip Reece. No further or greater proof of insolvency was required. The bona fides of the conveyance to Philip, if submitted as an original proposition to this court, would, we think, have to be determined against the defendants. The deed was made to Philip while he was in Montana and the evidence that any negotiations took place between the parties by correspondence is not of a satisfactory character. No money was paid on the consideration going to the father. Two hundred and eight

dollars was sent by Philip to pay interest due on the mortgages on the farm, but nothing has ever been paid on the notes given to his father. Negotiations were had between the officers of the bank and Thomas Reece and another son, who held a power of attorney from Philip, looking to a sale of the farm, and securing payment to the bank from the proceeds. While Philip testified that he bought the place for a home, we can imagine no good reason for his giving a power of attorney to his brother, unless it was to make a sale. There are other circumstances, which we will not take the time to note, all tending to impeach the bona fides of the conveyance to Philip, and which fully sustain the finding of the district court.

Relating to the homestead claim of the defendants, it is the settled law of this state that creditors can not complain of the transfer of exempt property by their debtor; and in *Stubendorf & Co. v. Hoffman,* 23 Nebr., 360, it was held that a fraudulent grantor of premises occupied as a homestead might assert his homestead exemption, if the court should find against the bona fides of the conveyance; and in *Horton v. Kelly,* 40 Minn., 193, it was held that "where a conveyance is set aside as fraudulent as to the creditors, the homestead interest of the grantor will be protected as if it had not been made." This requires us to consider whether Thomas Reece had a homestead right in the premises at the time of the conveyance to his son. Up to the date of the death of his wife, there can be no doubt that the farm was his homestead. He had occupied it as such from 1884. The removal to the farm of his son in 1890 to give his sick wife the benefit of a better house can not in any sense be considered an abandonment of the homestead. The cases in this state establish the rule that, once a homestead, that character continues to attach to the property until the contrary is shown, and the burden is on those who seek to show an abandonment. *Union Stock Yards Nat. Bank v. Smout,* 62 Nebr., 227. No act of the defendant himself, so far as the record discloses, can be pointed out that goes to impeach his right of homestead in the

premises if his personal status is such as to give him that right. It is insisted that after the death of his wife, there being none of his children residing at home and dependent on him for support, he does not come within the provisions of section 15 of our homestead law. To acquire a homestead in the first instance, there can be no doubt that the party asserting such right must be the head of a family, as defined in section 15 of the homestead act (Compiled Statutes, ch. 36) ; but, the homestead once acquired, its continuance after the loss of his wife, in the absence of children, or when children, if born to him, have attained their majority, and are maintaining themselves, depends, we think, on the consideration to be given section 17 of the act. Section 17 is as follows: "If the homestead was selected from the separate property of either husband or wife it vests, on the death of the person from whose property it was selected, in the survivor for life and afterwards in his or her heirs forever, subject to the power of the decedent to dispose of the same except the life estate of the survivor by will. In either case it is not subject to the payment of any debt or liability contracted by or existing against the husband and wife or either of them previous to or at the time of the death of such husband or wife, except such as exists or has been created under the provisions of this chapter." The exceptions mentioned in the latter part of the section, and for which the homestead may be sold, are debts secured by mechanics', laborers' or vendors' liens, or debts secured by mortgage executed and acknowledged by both husband and wife. The statute, in clear and express terms, provides that the surviving husband or wife shall continue to enjoy the benefit of the homestead exemption in cases where the title to the property stands in the name of the deceased spouse. Where the husband, being the owner of the fee of the homestead, dies, the statute is plain that the surviving wife is vested with a life estate therein, free and clear of all debts contracted by herself or her deceased husband prior to or at the time of his death, and it is equally plain that if the fee of the homestead is in

the wife, and the husband survive her, he is vested with a life estate, divested of all debts of either contracted prior to her decease. This is the plain reading of the statute, and the right thus vested in the survivor is not made to depend upon whether any issue resulted from the marriage, but is given regardless of whether there are children to be provided for by the survivor. In such cases it is clear that the survivor may claim the homestead as exempt from prior debts during his or her life, whether the head of a family, as described in section 15 of the act, or not.

It is argued with great earnestness that no provision is made for the continuance of the homestead right in the survivor where he is the owner of the fee, and ceases to be the head of a family, and that in such cases the homestead is liable for debts contracted prior to the decease of his wife. We can not agree with this contention. If we strike from section 17 so much as relates to the right of the owner of the fee to dispose of it by will, subject to the life estate created for the survivor, and providing for the succession of the remainder in the absence of a will, it reads as follows: "If the homestead was selected from the separate property of either husband or wife, it vests on the death of the person from whose property it was selected in the survivor for life. * * * In either case it is not subject to the payment of any debt or liability contracted by or existing against the husband and wife or either of them previous to or at the time of the death of such husband or wife, except such as exists or has been created under the provisions of this chapter." The words "in either case" plainly refer to the selection of the homestead. The selection may be made from the property of either the husband or the wife, but in either selection it shall not be liable for debts contracted or existing against both or either previous to or at the time of the death of one of them. The undoubted meaning and intent of the legislature was to vest in the survivor a home which could not be reached for debts contracted prior to the death of his or her spouse, regardless of whether such survivor was the head of a family or not.

We therefore recommend that the decree of the district court be reversed, and the case remanded, with instructions to enter a decree preserving to the defendant Thomas Reece, his homestead interest in the property.

AMES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed, and the case remanded with instructions to enter a decree preserving to the defendant Thomas Reece, his homestead interest in the property.

REVERSED AND REMANDED.