JOHN P. SATTLER, ADMINISTRATOR OF THE ESTATE OF EMANUEL LEVERONI, DECEASED, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

FILED FEBRUARY 17, 1904.   No. 13,223.

1. **Common Carrier:** ACTION: CONTRIBUTORY NEGLIGENCE. A fast through train on defendant's road was sidetracked at a small way station to allow another through train to pass.   Some fifteen minutes later, plaintiff's intestate left a car of the standing train, in which he was a passenger, and crossed diagonally the main track upon which the other train was approaching, at a time and in such direction that he could see the incoming train.   He hurriedly went to a pump some 10 steps from where he crossed the main track, hurriedly procured a drink, and ran back toward his car, attempting to pass in front of the rapidly moving train

on the main track, and was struck by the engine and killed. *Held,* That deceased was guilty of such negligence as to preclude recovery.

2. **Directing Verdict.** When the evidence is not sufficient to warrant a verdict for plaintiff, the court should not submit the case to the jury upon the theory that it is so sufficient. A peremptory instruction for defendant in this case *held* warranted.

3. **Case Approved.** *Chicago, R. I. & P. R. Co. v. Sattler,* 64 Neb. 636, approved and followed.

ERROR to the district court for Cass county: PAUL JESSEN, JUDGE. *Affirmed.*

*Matthew Gering,* for plaintiff in error.

*Woolworth & McHugh, contra.*

GLANVILLE, C.

This case was before this court under the title *Chicago, R. I. & P. R. Co. v. Sattler,* 64 Neb. 636, where a verdict for the plaintiff herein was set aside. Upon a second trial in the lower court, a verdict was instructed for the defendant company. To reverse the judgment entered thereon, the case is brought here, and, while there are many paragraphs in the petition in error, they are assignments of the same error in varied forms, and the only one that requires consideration is that assigned because of certain peremptory instructions. There is no contention on the part of the plaintiff that the evidence makes a better case this time than before, except as it is claimed that now the evidence establishes the fact that, on other days than the one when the accident occurred, the train on defendant's road, known as number 6, upon which the plaintiff's intestate was a passenger, occasionally took on and discharged passengers at this station. We fail to see any reason in the contention that this fact would change the status of the deceased on the day in question. He was a stranger in the locality, a through passenger from San Francisco to New York on a fast through train, and what may have been

done in regard to receiving passengers on this train, at any other time, has no bearing upon the question of any invitation on the part of the company for him to leave his car on this particular occasion.   As we read the evidence, there is no indication of such invitation at this time.   This change in the evidence is urged by plaintiff as a reason for holding that the deceased was, at the time of his death, a passenger upon the train within the meaning of section 3, article 1, chapter 72, Compiled Statutes (Annotated Statutes, 10039).   We are satisfied with the reasoning and holding of the court upon the former hearing, and do not think there is any change in the evidence which requires any different holding on this question.   But, even if we should hold differently, we think the negligence of the deceased was so gross as to be criminal within the meaning of the statute, and that the plaintiff is not entitled to recover under the clearly established facts of the case.   The following statement is copied from the previous decision:

"There is little or no dispute over the facts in the case. Leveroni, the deceased, was a through passenger over the railway of the plaintiff in error from the city of Denver to Chicago.   The train upon which he was traveling arrived at the station of Alva from the west on schedule time at 2:52 in the afternoon.   On its arrival at the station the train went upon a side track to await the arrival and passage of a west-bound train which was then due at that point; its schedule time being the same at that station as the train upon which the decedent was traveling.   The train from the east was behind time, and, while the train upon which Leveroni was a passenger was waiting on the side track, Leveroni left his train, crossed over the main track to the depot platform and to a pump a few feet west of the depot, to get a drink of water.   About the time that he reached the pump the west-bound train was heard to whistle, when Leveroni left the pump and started on a run for his car, and in crossing the track upon which the west-bound train was approaching the station, was struck by

the approaching train and instantly killed. The east-bound train upon which he was a traveler did not move from the side track until after the deceased was killed, nor had any signal or order been given that said train would move or start. It might be further stated that the evidence is undisputed that there was plenty of good drinking water in the car upon which the deceased was a passenger, and in all the cars of that train."

The holding of the court which was decisive of the case is as follows:

"A through train between Denver and Chicago ran onto a side track at an intermediate station to allow the passage of another through train from the east. A through passenger left his car, crossed the main track of the road to the depot, and went to a pump for a drink of water. He filled his cup from the pump, but, before drinking, heard the whistle of the incoming train, and started on a rapid run to regain his car. From the pump the track over which the incoming train was approaching could be seen for about 100 feet, and three steps from the pump toward the track over which the train was approaching the track was visible for a mile or more. When the passenger reached the track the approaching train was about 50 feet distant from him, and running at a high rate of speed. The passenger attempted to pass in front of the train, and was struck by the engine and killed. *Held,* That, under the circumstances, he was not 'a passenger being transported over the road,' within the meaning of section 3, article 1, chapter 72, of the Compiled Statutes, and the railroad was not liable for damages on account of his death because of his own negligence."

The above statements of fact are substantially borne out by the evidence in the bill of exceptions now before us, and we note the following in addition. The deceased was a man who had gone from place to place, and from state to state, sufficiently to be familiar with railroad travel. He was a man, as alleged and testified, capable of earning $1,500 per year, and must, therefore, have been of good

intelligence. He was on a through fast train, not stopping at stations generally. His train pulled in on a side track at a very small village, and remained standing there some 15 or 20 minutes before he left the car, and it seems impossible that he did not know the reason for the stop. He then started quite diagonally across the main track and, in doing so, could easily see the incoming train from the east. He hurried to the pump, hurriedly drank, and started back to his car, attempting to cross the main track on a run, so closely in front of the incoming train that he was struck and killed. The distances and his hurried movements show that the train was in plain view when he first crossed the track. Common experience teaches us that the few passengers from his train, and the bystanders that were on the platform at such a time, would be so watching the coming train as to attract attention thereto. The weight of testimony introduced by plaintiff is that the train was coming at the rate of some 45 miles an hour, but some put it at 60. The weight of such testimony shows that the whistle was sounded something like a quarter of a mile away, but one witness says from 40 to 60 rods away. Plaintiff's diagram shows that it was not more than 10 or 12 steps from the pump to where deceased was struck. His deduction from the evidence as stated in his brief is:

"After the train had been on the side track nearly 15 minutes, the deceased crossed the track to a pump upon the company's ground to get a drink of water; he walked in a northeasterly direction from his car, where he could see for more than 2 miles east along the track. No train was in sight. While drinking, he heard a whistle, and, thinking it was his own train, instantly dropped the cup and ran in a southwesterly direction diagonally across the track, without turning his head. When on the south rail, he was struck and killed. The distance from the pump to the place where he was struck was about 32 feet."

Considerable attempt was made to have witnesses give their estimate of time in seconds as to the sequence of events when the accident occurred, but *movements* furnish

a much more reliable criterion than such estimates. Assuming that the train was running 60 miles an hour, and that the whistle was sounded but 60 rods away, which is all the testimony will warrant, more than 11 seconds would then be required for the train to reach the station. This would be time enough for one to run three times the distance from the pump to where deceased was struck. Again, if the deceased went, as testified, from the track to the pump, and had not time to drink before he ran back, and was struck, it is impossible that the train was not in sight when he first crossed the track. His movements clearly show, we think, that he must have known, and did know of the coming train, and that he miscalculated his ability to cross before it.

The language of the Pennsylvania court in the case of *Hess v. Williamsport & N. B. R. Co.*, 181 Pa. St. 492, 37 Atl. 568, may be quoted as apt and appropriate:

"The fires under the boilers were doing their work; the stroke of the lever was kept up; the exhaust of the engine did not cease; the rumbling of the wheels on the rails was not muffled; the undeniable fact is that there were sight and sound of this engine for half a mile before it reached the crossing. We say undeniable, because to deny it is out of accord with the proof and our observation and experience. We must, in the administration of justice, adopt that as truth which our ordinary senses demonstrate to be true. If this unfortunate man could see and hear, which is not questioned, then, before he drove on the track he saw and heard this coming engine and, miscalculating the speed of his own team as compared with that of the locomotive, met his death; the law calls this contributory negligence, and prohibits a recovery. 'One who is struck by a moving train which was plainly visible from the point he occupied when it became his duty to stop must be conclusively presumed to have disregarded that rule of law and of common prudence, and to have gone negligently into an obvious danger.' *Myers v. B. & O. R. Co.*, 150 Pa. St. 386."

Complaint is made because courts sometimes take such cases from juries, urging that if juries could find one way, it can not be said that reasonable minds might not differ from the necessity of finding the other.    It must be remembered that when a court submits a case to the jury upon such evidence as this, it, in effect, instructs the jury, as a matter of law, that the evidence is sufficient to support a verdict for plaintiff.    If it is not, the court should refuse to submit the case to the jury upon the theory that it is so sufficient.    To instruct a verdict either way in a proper case is not the invasion of the province of a jury, but to refuse to do so is the denial of a right inherent in the right of trial by jury, and unfair to the jury itself.

We are clearly of the opinion that the trial court did right in taking this case from the jury.    This disposes of the only error complained of, and we recommend that the judgment be affirmed.

ALBERT, C., concurs.    FAWCETT, C., not sitting.

By the Court: The conclusions announced in the foregoing opinion are approved and the judgment of the trial court is

AFFIRMED.