BURTON T. JUDSON ET AL., APPELLEES, V. MARY SHERIDAN CREIGHTON ET AL., APPELLANTS.

FILED NOVEMBER 26, 1910.   No. 16,176.

1. **Executors and Administrators:** HOMESTEAD: LIABILITY FOR DEBTS OF ESTATE.   Where a homestead is selected during the lifetime of both husband and wife, and after the death of one the survivor resides upon the premises during his or her life, the real estate is not subject to sale for the satisfaction of the debts of either, which are not a lien thereon, nor to pay the costs of administering the estate of such survivor; but, if the title holding spouse dies intestate, the title descends to his or her heirs, whether direct or collateral, exempt from such debts.

2. ———: ASSETS.   The property described in subdivision 1, sec. 176, ch. 23, Comp. St. 1901, is not an asset in the hands of an administrator whose decedent died in 1902.

3. **Trial:** REFUSAL TO SUBMIT ISSUE:   INSUFFICIENCY OF EVIDENCE.   It is not error for the court to refuse to submit to the jury a defense of equitable estoppel where the evidence is insufficient to sustain a material element of that defense.

APPEAL from the district court for Webster county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

. *L. H. Blackledge,* for appellants.

W. *C. Dorsey, contra.*

ROOT, J.

This is an action in ejectment and for rents and profits. The plaintiffs prevailed, and the defendants appeal.

The plaintiffs are collateral heirs of DeJay Judson, deceased, who departed this life intestate in February, 1902, a resident of Harlan county, leaving no widow or direct heirs him surviving. The property in controversy was the homestead of Mr. Judson and his wife. Because the parties have presented this case upon the hypothesis that Mr. Judson held the legal title to said premises, and for no other reason, we shall adopt that theory.

In 1903 the administrator of Mr. Judson's estate, acting under a license of the district judge, sold the premises in controversy, in connection with two other lots, to the defendants' grantor. The sale was confirmed and a deed duly issued. The defendants argue that since the decedent left him surviving no widow, children or other persons dependent upon him for support, the homestead was subject to sale for the payment of his debts. Section 17, ch. 36, Comp. St. 1901, is as follows: "If the homestead was selected from the separate property of either husband or wife it vests, on the death of the person from whose property it was selected, in the survivor for life and afterwards in his or her heirs forever, subject to the power of the decedent to dispose of the same except the life estate of the survivor by will. In either case it is not subject to the payment of any debt or liability contracted by or existing against the husband and wife or either of them previous to or at the time of the death of such husband or wife, except such as exists or has been created under the pro-

visions of this chapter." The exceptions referred to are
mechanics', laborers', and vendors' liens, and mortgages
duly executed. Section 3, ch. 36, *supra*. It is not con-
tended that the lots in controversy were sold to satisfy a
mortgage debt or a lien. The words "in either case" in
section 17, *supra*, refer to the selection of the homestead.
*First Nat. Bank v. Reece*, 64 Neb. 292. Proof of residence
is evidence of such selection. *Hobson v. Huxtable*, 79
Neb. 334, 340. If a homestead has been selected and the fee
holding spouse survives his or her consort, such survivor
may hold the homestead free from the demands of credit-
ors. *First Nat. Bank v. Reece*, *supra*. The legislature
has provided that the homestead shall descend free from
all debts contracted by the husband or the wife, so that
the heirs take title free from all claims of their decedent's
creditors. The property, therefore, was not subject to sale
for the satisfaction of DeJay Judson's debts. *Tindall v.
Peterson*, 71 Neb. 160; *Bixby v. Jewell*, 72 Neb. 755;
*Brandon v. Jensen*, 74 Neb. 569; *Holmes v. Mason*, 80
Neb. 448. There is ample evidence in the record to sus-
tain the plaintiffs in their assertion of heirship. The de-
cree of the county court adjudicates that relation and
concludes the defendants upon that issue.

The defendants further contend that the plaintiffs are
estopped to maintain this action because they accepted
part of the proceeds of the administrator's sale with
knowledge of the source from whence that money came. As
we understand the record, the evidence to sustain this is-
sue may be summed up as follows: The defendants intro-
duced in evidence the record of the administrator's appli-
cation for license to sell four lots, including the property
in controversy, the orders made by the district judge, the
administrator's deed, and the final order of distribution,
together with the receipts of the heirs, and this evidence is
supplemented by an admission that the homestead was de-
scribed in the administrator's inventory and statements
in the depositions of two of the plaintiffs that they
knew their decedent's home had been sold by the adminis-

trator and that they were represented by counsel in the settlement of the estate. The district judge, upon the application for license, found that the debts against Judson's estate amounted to $815, the costs of administraton would amount to $250, and that the value of the personal assets of the deceased did not exceed $156.86. It appears that the administrator received $985 for the four lots. It further appears from the final order made by the county court that, after the administrator had paid all of the debts of the deceased and the costs of administering his estate, there remained in his possession $59.50, which the court ordered distributed among the plaintiffs as the heirs of the deceased. The money was thus distributed in sums ranging from $1.70 to $11.50. It nowhere appears that the administrator reported to the county court the proceeds of the sale of the homestead, or that he used that money to pay the debts of the deceased, or that the money distributed came from that fund. The administrator was a witness for the defendants, but was not interrogated upon this subject. It may be that the administrator did not receive any personal assets of the estate other than the $156.86 hereinbefore referred to; but if he did not, and there were no other personal assets of the deceased in existence at the time of his death, that money was exempt from the claims of creditors and the costs of administering the estate. In that event the heirs were entitled to the money by virtue of subdivision 1, sec. 176, ch. 23, Comp. St. 1901. *In re Estate of Fletcher*, 83 Neb. 156; *In re Estate of Manning*, 85 Neb. 60; *In re Estate of Leavitt*, 85 Neb. 521. If any of the proceeds of the sale of the homestead were received by the plaintiffs, that fact could easily have been established by the testimony of the administrator. To say the fact should be deduced from the evidence in this record is to indulge in mere conjecture. In our opinion, the district judge committed no error in refusing to submit the issue to the jury. *Chicago, R. I. & P. R. Co. v. Sporer*, 69 Neb. 8; *Sattler v. Chicago, R. I. & P. R. Co.*, 71 Neb. 213.

We find no error in the assignments argued, and the judgment of the district court is

**AFFIRMED.**