Myrtle Tindall et al., Appellees, v. Christian Peterson et al., Appellants.*

Filed February 17, 1904. No. 13,389.

1. **Homestead:** Sale by Administrator: Validity. A homestead of less value than $2,000 can not be disposed of at administrator's sale either for the discharge of incumbrances thereon, or for the payment of debts against the estate of the decedent, and a license granted by the district court, purporting to authorize such a sale, is absolutely void.

* Rehearing allowed. See opinion, p. 166, *post.*

2. ——. A homestead may be composed of contiguous parts of different governmental subdivisions.

3. **Life Tenant:** INCUMBRANCES. As a general rule a life tenant who, in order to preserve the estate, has paid off and discharged an incumbrance upon the fee, is entitled to reimbursement from the reversioners or remaindermen.

APPEAL from the district court for Kearney county: ED L. ADAMS, JUDGE. *Reversed.*

*M. D. King,* for appellants.

*G. L. Godfrey, contra.*

AMES, C.

This is an appeal from a decree quieting in the plaintiff's the title to certain real estate. On the 8th day of September, 1887, Thomas Tindall died intestate, and seized in fee of the lands in controversy, subject to two mortgages aggregating in amount $552.50. He left surviving him a widow, Sarah J., and five minor children. Of the latter, three have since died without issue, and the survivors are the plaintiffs and appellees in this action. At and before the death of Thomas the lands were occupied as a homestead by himself and his family. The widow was appointed sole administratrix of his estate, and applied to the district court for, and obtained, a license to sell the homestead, or so much thereof as should be necessary for the payment of the mortgage debts, and of certain other claims proved and allowed against the estate of the deceased. The order granting the license required the execution of a bond to account for the proceeds of the sale, as is provided by section 75 of chapter 23, entitled "decedents," of the Compiled Statutes (Annotated Statutes, 4949). The administratrix executed such a bond, which was approved by the court, but, before the sale, she resigned her trust, and one Thomas B. Keedle was appointed to succeed her therein. It does not appear that Keedle executed a like bond, though he may have done so; the proceedings were not entered upon the journals of the court, and such pa-

14

pers as pertain to them are found among the files of the clerk's office only. The sale, having been advertised, was made by Keedle, at the specified date, to the widow as purchaser, and, upon being reported by him was confirmed by the court, and a conveyance was executed pursuant to it. Of the purchase price, $800, a sufficient amount was applied to the satisfaction of the mortgage liens and the procuring of their release, and the residue to the payment of claims allowed against the estate of the deceased. The money used for these purposes was procured by means of a new mortgage upon the premises for $800, executed by the purchaser, the widow. Afterwards, she conveyed the premises as in fee, subject to the mortgage, to one Windover, and then married him. Subsequently she died, and the lands came by mesne conveyances from her grantee to the defendants and appellants in the action. There is no question of laches or limitations involved. One of the plaintiffs, who appears by guardian, has not yet attained to his majority, and the other, at the beginning of the suit, had done so but recently.

The district court adjudged all the above mentioned proceedings and conveyances to be void, and to be canceled, and quieted the title to the premises in the plaintiffs. That they were ineffectual to convey the legal title or to deprive the heirs at law of their reversionary estate in the lands, we are ourselves convinced. It has been held by this court, that the estate which vests in the widow and children in lands selected from the property of the husband, and occupied as a homestead at the time of his death, is absolute, and can not be lost by abandonment, or devested by sale upon execution on a judgment against the husband. *Durland v. Seiler,* 27 Neb. 33; *Baumann v. Franse,* 37 Neb. 807.

In *Guthman v. Guthman,* 18 Neb. 98, the court go so far as to say, in effect, that the homestead estate can not be conveyed or alienated by the widow, in any manner, during the minority of the children, or of any of them, and it appears to us that such is the correct doctrine, because,

otherwise, the heirs of the husband might be deprived of their reversionary interest, which is set apart and exempted to them by the statute, in as unequivocal terms as is the homestead interest itself. The principle of these decisions was reaffirmed in *Cooley v. Jansen,* 54 Neb. 33, where it was again expressly held that a sale of the homestead by an administrator, under a license for the payment of debts, is without authority of law, and that an administrator is not entitled to the possession, or to the rents and profits of the homestead, although its use, as such, has been abandoned. It is true that, in these cases, objection was made in the very proceedings by which the homestead was sought to be appropriated, instead of by collateral attack as in this case, but we think that circumstance can make no difference. The proceeding by an administrator to appropriate lands belonging to the estate to the payment of debts, contracted by the deceased in his lifetime, is correctly described by counsel for appellants as a proceeding *in rem,* but the very principle which is the foundation of the foregoing decisions, and from which they proceed, is that the administrator has neither title nor right of possession of the homestead, and therefore he can confer upon the court no jurisdiction over the same. It is, moreover, difficult to understand how minor children, often, as in this instance, of very tender years, can have any opportunity to object to such a proceeding after arriving at years of discretion, except by collateral attack. The statute does not save to them the right of direct impeachment by appeal or error after attaining their majority, and if they can not assail the proceedings indirectly, all that is requisite to deprive them of their estate is the connivance or collusion of the mother, who in most cases is their legal as well as their natural guardian. Neither do we think that the fact that the greater part of the proceeds of the sales was applied to the payment of the mortgage liens, was effectual to supply the want of jurisdiction. The mortgage debts had not been admitted or allowed in probate, and unless and until they

had been so, at least, the administrator, as such, had no interest in or concern with them. Even if they had been so, the statute, which furnishes the exclusive measure of his powers and duties, confers neither upon him, nor upon the district court, in probate proceedings, any authority to provide for their payment by a sale of the homestead. He has no duty to perform with respect to the homestead except, in proper cases, to see that it is correctly ascertained and set aside. The proceedings were so grossly irregular and faulty in several respects that their validity could, in any event, have been maintained with difficulty, if at all, but, the court having been without jurisdiction of the subject matter, it is not worth while to discuss them.

But there is a further contention that only a part of the lands sold were included within the homestead exemption. There are two 80-acre tracts, being, respectively, parts of different governmental subdivisions, but contiguous along their whole length, and separated only by an imaginary line. The dwelling house and other buildings and appurtenances were all on one of these tracts, but both were used and cultivated, indiscriminately and together, for the support of the deceased and his family, and the combined value of the two was very much less than $2,000, the amount exempted by the statute. The act exempts "the dwelling house in which the claimant resides and its appurtenances, and the land on which it is situated, not exceeding 160 acres," etc., and it is argued that, as the buildings were situated upon one only of these tracts, that alone constituted the homestead, and there are cited in the brief of appellants certain authorities which seem to support this view. *Woodman v. Lane,* 7 N. H. 241; *Kresin v. Mau,* 15 Minn. 87, but we think that the greater weight of authority, and the better reason, incline to the contrary opinion. *Clements v. Crawford County Bank,* 64 Ark. 7, 62 Am. St. Rep. 149; *Hodges v. Winston,* 95 Ala. 514, 36 Am. St. Rep. 241; 15 Am. & Eng. Ency. Law (2d ed.), pages 586, 587 and citations.

The statute does not use the word tract or its equiva-

lent, and says nothing about governmental surveys, and in our opinion the latter are not of controlling importance. The owner of the land has as good a right to define the word tract, as applied to his holdings, as has his predeces- sor in title. In such cases the uses to which the lands are put, and the nature and circumstances of their cultivation, and the manner of the application of their produce, are more significant of the intent of the claimant and of the real character of his occupancy, than are the surveys and monuments of their former owners.

But upon the facts disclosed by this record the appel- lants are not wholly without right in the premises. The statute and the selection of the homestead vested in the widow, upon the death of her husband, an estate for life, leaving a reversion in the heirs of the latter. There is no evidence of fraudulent intent on her part, or on the part of her grantees, by direct or mesne conveyance. The pro- ceedings to which she became a party eventuated, not only in preserving her life estate, but in relieving the fee of an incumbrance which not improbably might have ex- tinguished the reversion, and it is not unlikely that by such means she was enabled to rear and educate the chil- dren with greater comfort and care than she could other- wise have done. It is a general rule, subject to exceptions not applicable to the case at bar, that a life tenant, who in order to preserve the estate pays off an incumbrance upon the fee, is entitled to reimbursement from the rever- sioners or remaindermen. In accordance with this rule the appellees ought not to be let into possession until they have discharged this equitable burden—that is, until they have paid, or have secured by a lien or charge upon the premises, the amount paid in satisfaction of the mortgages existing at the death of their father, with 7 per cent. annual interest on that amount from the date of the pay- ment. The court found that the value of permanent im- provements put upon the lands by the appellants equals the value of the use and occupation of the premises since the demise of the widow, so that a further accounting for

rents and profits is uncalled for, but, inasmuch as the rights of the parties can be best adjusted in the neighborhood in which the lands lie and the parties reside, and considerable time may be requisite for effecting that purpose, it is recommended that the judgment of the district court be reversed and the cause remanded for further proceedings in accordance with law, and that each party be taxed with their own costs up to this time.

HASTINGS and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and the cause remanded for further proceedings in accordance with law, and that each party pay their own costs to this date.

REVERSED.

The following opinion on rehearing was filed May 5, 1904. *Former judgment of reversal modified:*

1. **Life Tenant:** REVERSIONER: INCUMBRANCES. Ordinarily, a life tenant who pays off an incumbrance upon the fee, will be entitled to be reimbursed by the reversioner or remainderman the amount so paid, less such sum as will equal the present value of the annual installments of interest he would have paid during his life, if the incumbrance had remained so long in existence, with lawful interest on the residue, so ascertained, from the date of payment.

2. **Minors:** EQUITY. Although minors may not be bound either by contract or by estoppel, equity will not lend its affirmative aid to enable them to take an unjust advantage of the mistakes or misfortunes of their adversaries.

AMES, C.

This case is before us on a motion in form for a rehearing, but which in fact calls for nothing more than a modification of the former decision of this court. The accuracy of the statement of facts in the former opinion, *ante*, p. 160, is not questioned, and it is not necessary to repeat them here. The first ground of the motion, which is by

the reversioners, appellees, is that the decision complained of improperly requires them to pay interest on the amount of the incumbrance on the premises at the time of the death of the father, between the time it was discharged by the life tenant, the mother, and her death. How considerable this interval was, is disclosed by none of the briefs, and as affecting the principle involved is perhaps immaterial. The subject matter of the equitable right of reimbursement on account of the payment of this lien, was not touched upon at the original hearing, so that we were both imperfectly informed as to the circumstances, and without the aid of counsel in the ascertainment of the principles applicable to the case.

There seems to be no question that the duty of a life tenant to preserve the premises from waste, includes the obligation to keep down the interest upon existing incumbrances. In case he pays the principal, the rule generally adopted is that the burden is apportioned between him and the reversioner or remainderman in such manner as that the tenant will "pay such a sum, as would equal the present value of the amount of interest he would probably have paid during his life, if the mortgage had continued so long in existence." Tiedeman, Real Property, sec. 66. Or, as is said in *Moore v. Simonson*, 27 Ore. 117, "The life tenant must pay the present worth of an annuity equal to the annual interest running during the number of years which constitute the expectancy of life, the balance, after subtracting the sum thus ascertained from the incumbrance, should be borne by those in remainder." 1 Washburn, Real Property (4th ed.), *96; 1 Story, Equity Jurisprudence (13th ed.), sec. 487; 3 Pomeroy, Equity Jurisprudence (3d ed.), sec. 1223.

But it is suggested that the right of contribution is personal to the life tenant and expires with the termination of her estate, or, at most, survives to her personal representative and can not be availed of by her successors in the possession of the premises. Ordinarily, this is perhaps true, but the right is one of equitable creation, and the

authority that brought it into existence is doubtless competent to mold and modify it in its application to particular cases, in such manner that it shall not miss its original purpose of doing justice between the parties. As was said in the former opinion, there is no question of good or bad faith involved, and the arrangement by which the former incumbrance was discharged and the premises transferred to Windover, the second husband of the mother, was without doubt beneficial to her children who are the present complainants. The first mortgage was satisfied and the second mortgage was void, but the latter was accompanied by the personal obligations of the supposed purchasers whose conveyances were, perhaps, effectual to convey the life estate of the widow, and who satisfied the debt. In good faith they stepped into the shoes of the widow as respected her duties and obligations toward the land, and with regard to it toward the reversioners, and equity and good conscience require that they should be treated as having succeeded to her rights. Whether or not, practically, the same result might be worked out under the doctrine of subrogation, pure and simple, we are not interested to inquire.

To the proposition that the reversioners are not chargeable with the value of the lasting and valuable improvements in an accounting for the value of the use and occupation, we are unable to give our assent. As we have said and repeated, there is no suspicion of intentional wrong doing, but an appearance to the contrary, and, although it may be true that the heirs being minors can not be held to pay for benefits either by contract or estoppel, yet we think that, under the circumstances of this case, a court of equity will not lend its affirmative aid to enable them to profit by the misfortunes or mistakes of their adversaries.

We are of opinion that justice, as complete as possible, will be done between the parties, by so modifying the former decision of this court as to charge the appellants, as of the date when the first mortgage was paid off, with a

sum equal to the then present value of the amount of interest the life tenant, the mother, would have been required to pay during the actual continuance of her life, as shown by the record, and that the reversioners, the appellees, be required, before being let into possession, to pay, or charge as a lien upon the premises, the residue of the sum paid for the discharge of the mortgage, with 7 per cent. interest from the date of payment.

OLDHAM, C., concurs.  HASTINGS, C., not sitting.

By the Court: It is ordered that the former decision of this court be so modified as to charge the appellants, as of the date when the first mortgage was paid off, with a sum equal to the then present value of the amount of interest the life tenant, the mother, would have been required to pay during the actual continuance of her life, as shown by the record, and that the reversioners, the appellees, be required, before being let into possession, to pay, or charge as a lien upon the premises, the residue of the sum paid for the discharge of the mortgage, with 7 per cent. interest from the date of payment.

JUDGMENT ACCORDINGLY.