ROY Y. HOBSON ET AL., APPELLEES, v. ADA E. HUXTABLE ET AL., APPELLANTS.*

FILED JUNE 7, 1907.  No. 14,845.

1. **Homestead: SELECTION: PRESUMPTION.** The actual use of a dwelling as a family home is a sufficient selection under the provisions of the homestead law.

2. ————: ————. Where the homestead is selected from the property of the wife, it must be with her consent; but such consent may, until the contrary is shown, be presumed from the use and occupancy of the property as a family home.

* Rehearing allowed.  See opinion, p. 340, *post.*

Hobson v. Huxtable.

3. **Remainders:** QUIETING TITLE: LIMITATIONS. Under the provisions of sections 57, 59, ch. 73, Comp. St. 1905, a remainderman may bring an action to quiet title during the life of the life tenant, and the running of the statute of limitations is not in such case postponed until the death of the life tenant.

4. ———: ———: ———. Where a defendant in an action to quiet title claims as a cotenant with the plaintiff, and the action proceeds to a decree quieting title in the cotenants, plaintiff and defendant, and against the other defendants, the action will be deemed an action to quiet title, and if the statute of limitations would run against such action by any defendant such defendant will be barred.

APPEAL from the district court for Adams county: ED L. ADAMS, JUDGE. *Judgment in favor of Roy Y. Hobson and John T. Hobson affirmed: Judgment in favor of Ida Belle Busby and George W. Hobson reversed.*

*W. R. Burton* and *R. A. Batty,* for appellants.

*H. S. Dungan* and *John C. Stevens, contra.*

CALKINS, C.

Anna E. Hobson died on the 17th day of August, 1888, intestate, leaving her surviving husband, John H. Hobson, and her children, John T., aged 1 year, Roy Y., aged 7 years, Ida Belle, aged 14 years, and George W., aged 18 years. At the time of her death she was seized of a quarter section of land upon which she had resided with her husband and family for several years preceding her death. The land did not exceed in value, over and above incumbrances, the sum of $2,000, so that the same constituted the family homestead, if the mere fact of occupying it as a family residence was a sufficient selection under the homestead law. On the 27th day of October, 1888, one Palmer was appointed administrator of the estate of said deceased, and he in May filed his petition under the statute for license to sell said lands to pay debts. Such license was granted by the district court, and such proceedings were had thereunder that the premises were on

the 24th day of October, 1890, sold by the said administrator to the defendant Charles A. Huxtable, and, the said sale having been confirmed, the administrator conveyed the premises to said purchaser, who went into possession under said deed, and who has, with his wife, the defendant Ada E., remained in actual possession ever since. It appears that no record of the oath required to be taken by the administrator can be found in the district court, but that the proceedings were otherwise regular. On the 15th day of June, 1904, the plaintiffs Roy Y. Hobson and John T. Hobson commenced this action, setting forth the foregoing facts and praying for a decree declaring the administrator's deed void. John H. Hobson, the surviving husband of Anna E., died pending this action, on the 18th day of June, 1905. On the 18th day of July, 1905, the defendants Ida Belle Hobson, now Busby, and George W. Hobson filed an answer in this action, admitting the allegations of the plaintiff's petition, alleging the death of John H. Hobson, asserting title in themselves, and asking that their rights in the property be investigated, and that the defendants Huxtable be ejected from the premises. There was a plea of the statute of limitations against these defendants by the defendants Huxtable. The district court rendered a decree quieting the title in the four Hobsons, subject to the amount of a mortgage which had been paid off by or with the money received from the purchaser at the administrator's sale. From this decree the defendants Huxtable appeal.

1. The appellants contend that the fact of the use of the property as a family home for herself, husband and children for some years before, and up to the time of her death, was insufficient to show that the homestead was selected with the consent of the wife, and, as to the defendants Ida Belle and George W., that more than ten years have elapsed since they became of age, and that they are accordingly barred by the statute of limitations. It is admitted by the appellants that, where the husband is the owner of the fee, the mere fact of residence is suffi-

cient selection; but they insist that, where the wife is the owner, there must be some further evidence of her consent. The statute provides that "if the claimant be married, the homestead may, be selected from the separate from her separate property." The counsel for appellants property of the husband, *or with the consent of the wife,* lays stress upon the words in italics, and argues that to give them effect there must be some further evidence of the consent of the owner of the fee where the property is in the name of the wife than where it is owned by the husband. The cases cited from California and Idaho do not assist us, for in each of these states the statute requires the selection of a homestead to be made by an instrument in writing executed and recorded in the same manner as a conveyance. Our own court has in several cases assumed that the fact of residence was sufficient evidence of selection in a case where the property belonged to the wife. *Larson v. Butts,* 22 Neb. 370; *France v. Bell,* 52 Neb. 57; *First Nat. Bank v. Reese,* 64 Neb. 292, and, *Brichacek v. Brichacek,* 75 Neb. 417, were all cases where the property was in the name of the wife, and the homestead character was sustained without proof of any formal consent of the wife. It is, however, but fair to say that in none of these cases was the fact that the statute requires the selection to be made in such cases with the consent of the wife discussed. *Klamp v. Klamp,* 58 Neb. 748, is the only case brought to our attention in which the effect of these words has been considered, and it was there held that a husband could not acquire the homestead in the separate property of the wife except with her consent. The question in issue was whether or not the husband had a right to compel the wife to account to him for the proceeds of the homestead which was the separate property of the wife and the court held that he had not that right. We do not think that this case established the doctrine contended for by the appellants that the wife must declare her formal consent to the selection of a homestead from her

property. We think her consent will be presumed from the actual use of the property as a homestead, which presumption can only be overcome by proof that she did not in fact consent. The property being the homestead of the deceased descended to the husband during his life, and, upon his death, in fee to the children. This being the case, the license to the administrator was void, even though the proceedings were regular. *Tindall v. Peterson*, 71 Neb. 166; *Brandon v. Jensen*, 74 Neb. 569.

2. Section 57, ch. 73, Comp. St. 1905, provides "that an action may be brought and prosecuted to final decree, judgment, or order, by any person or persons, whether in actual possession or not, claiming title to real estate, against any person or persons, who claim an adverse estate or interest therein, for the purpose of determining such estate or interest, and quieting the title to said real estate"; while section 59 contains the further provision that "any person or persons having an interest in remainder or reversion in real estate shall be entitled to all the rights and benefits of this act." It is clear that under this statute a remainderman may maintain an action to quiet title during the life of the life tenant; and it follows that the disability of the defendants Ida Belle and George W. ceased, and their right to bring an action to quiet this title accrued, more than 10 years prior to the filing of their answer in this case. It is contended by the attorney for the defendants Ida Belle and George W. that the claim set up in their answer is to be considered an action in the nature of ejectment, and that such an action could not accrue to them during the life of John H. Hobson, the life tenant. This again is met by the defendants Huxtable with the contention that, since the Huxtables did not claim under John H. Hobson, and could not claim to be the owners of his interest for life, an action by the heirs to obtain possession could have been as well maintained before as after his death.

We are, however, unable to regard this suit as an action in the nature of ejectment. The plaintiffs' suit was to

quiet title, and, if we admit this claim of the defendants Ida Belle and George W., we are committed to the anomalous proposition that two tenants in common can join in an action which shall be on the part of one an action to quiet title, and on the part of the other an action in ejectment. The two actions are incompatible. They require different methods of trial and a different judgment at the end. If we accept the view of the attorneys for Ida Belle and George W. that the action of ejectment could not accrue during the life of John H. Hobson, they had no right to bring ejectment at the time of the commencement of this action. If the action against the Huxtables was ejectment, they were entitled to a trial by jury, which they did not demand, and, under the statute in force at that time, to a new trial as a matter of right, which they did demand and which was denied them. If it was an action to quiet title, it was not only within the power but it was the duty of the court to require the heirs of Anna E. Hobson, as a condition of granting them any relief, to do equity by reimbursing the Huxtables for the money advanced by them to discharge mortgage liens upon the land. *Henry v. Henry,* 73 Neb. 752. It is a practical as well as a legal impossibility to join two such diverse actions. The court below regarded this as an action to quiet title. The decree quiets title in the heirs, subject to the mortgage which was paid out of the proceeds of the sale by the administrator, orders the defendants Huxtable to execute deeds, and enjoins them from claiming title. Such a decree is suitable in an action to quiet title, but could not be rendered in an action in ejectment. The defendants Ida Belle and George W. do not object to this decree, and we are constrained to hold that their action is in the nature of an action to quiet title, and that it was barred by the statute of limitations.

We therefore recommend that the judgment of the district court be affirmed as to the plaintiffs Roy Y. Hobson and John T. Hobson, and that the same, as to the defend-

ants Ida Belle Busby and George W. Hobson, be reversed and their action dismissed.

JACKSON and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the court below in favor of the plaintiffs Roy Y. Hobson and John T. Hobson is affirmed, and the judgment in favor of the defendants Ida Belle Busby and George W. Hobson is reversed and their action dismissed, and the costs of this court are divided equally between appellants Huxtable and appellees Ida Belle Busby and George W. Hobson.

JUDGMENT ACCORDINGLY.

The following opinion on rehearing was filed April 23, 1908. *Former judgment vacated and decree entered:*

1. **Stipulations:** CONSTRUCTION. When litigants stipulate that certain facts exist, and the language employed is at all equivocal, the evident definition given by both litigants to the words in the stipulation will control, and upon appeal they will be bound thereby.

2. **Homestead:** ESTATES OF HEIRS. If a homestead be selected from the separate property of a married woman in her lifetime, upon her death intestate, a life estate vests in the surviving spouse, and remainder in the heirs of the deceased.

3. **Remainders:** QUIETING TITLE. The heirs aforesaid may, during the life estate, maintain an action under sections 57-59, ch. 73, Comp. St. 1907, for the purpose of quieting their title or removing a cloud therefrom.

4. ———: ———: LIMITATIONS. If a remainderman, not being under any legal disability, fails for ten years after his cause of action accrues to commence his suit, he is barred by the statute of limitations from maintaining his action to quiet title, and the fact that a remainderman owning an undivided interest in real estate may be under a legal disability will not toll the statute as to the other remaindermen not within the exception.

5. ———: ———: ———. If the remainderman be under a legal disability when the aforesaid cause of action accrues, the statute will not commence to run against him until the disability is removed.

6. ————: EJECTMENT: LIMITATIONS. The remainderman's estate in the homestead will not support an action in ejectment during the lifetime of the life tenant, and the statute of limitations will not commence to run against that possessory action until the demise of the surviving spouse.

7. Equity: RIGHT OF POSSESSION. In an equitable action to set aside a deed, where the right of possession is in issue and depends upon principles of equity that must necessarily be determined by the court, it is the duty of the court to determine the right of possession, if all parties in interest are before the court, and put the parties entitled thereto into possession.

8. ————: SUBROGATION: LIMITATIONS. In case a defendant as a matter of equity is entitled to be subrogated to the lien of a mortgage upon real estate, it is within the power of a court of equity, as a condition precedent to granting equitable relief to the owner of the real estate, to compel the payment of that mortgage, even though by its terms said lien be barred by the statute of limitations.

9. Remainders: VALUE OF USE AND OCCUPATION: EVIDENCE. Evidence examined, and *held* insufficient to justify a finding concerning the value of the use and occupation of the real estate involved for that part of the crop season of 1905 subsequent to June 18.

ROOT, C.

In our former opinion, *ante*, p. 334, may be found a statement of the facts in this case. A rehearing has been granted and the entire record presented for our consideration.

1. The defendants Huxtable insist that the record does not disclose that Anna E. Hobson owned the real estate in litigation in fee simple; that they stipulated only that she died seized of the real estate; that seizin may be for life or for years, and fall far short of an estate in fee simple; that, as they had interposed the defense of title by adverse possession, the heirs of Anna E. Hobson must trace their title back to the United States. We do not think it necessary to decide the legal definition of the word "seizin," because it was used in this case evidently as a synonym for title in fee simple. The testimony of the witness Tomkins further establishes that Mrs. Hobson purchased the farm some ten years before her death, and

resided thereon with her family from the time she acquired the land until she died.

2. It is claimed that the children of Anna E. Hobson did not take a vested estate in remainder upon the death of their mother. We cannot agree with counsel. The writers refer to the estates included within the homestead as a life estate for the surviving spouse, and either a remainder or reversion in the heirs. "A remainder is a remnant of an estate in land, depending upon a particular prior estate, created at the same time, and by the same instrument, and limited to arise immediately on the determination of that estate, and not in abridgment of it." 4 Kent, Commentaries (13th ed.), *197. "A reversion is the return of land to the grantor and his heirs, after the grant is over." 4 Kent, Commentaries (13th ed.), *353. In *Caldwell v. Pollak*, 91 Ala. 353, the estates are thus referred to: "A homestead exemption, actually and rightfully interposed, has the effect in law of dividing the freehold into two *quasi* ownerships, the one for life, and the other in remainder." The title in the succession of a homestead is not evidenced by written grant, but arises from seizin, the family relation and residence; and those facts take the place of the written instrument that usually evidences the prior estate and the one in remainder. The nature of the estate devolving upon the heirs at the death of the fee-holding spouse is settled as squarely as the decision of this court can establish any principle of law, and is not open to question. In *Schuyler v. Hanna*, 31 Neb. 307, we held, "under section 17 of the homestead law of 1879, that the heirs of the person whose property had been selected for a homestead took a vested remainder therein, subject to the life estate of the surviving husband or wife." In *Fort v. Cook*, 3 Neb. (Unof.) 12, Mr. Commissioner HASTINGS reviews the case of *Schuyler v. Hanna*, and clearly demonstrates that the estate of the heir vests upon the death of the parent. *Durland v. Seiler*, 27 Neb. 33; *Cooley v. Jansen*, 54 Neb. 33.

3. It is asserted that an action to quiet title cannot be

maintained by the heirs during the lifetime of the surviving spouse.  Our statutes plainly give the right.  Comp. St. 1905, ch. 73, secs. 57-59.  Section 59 is surplusage, unless it extends that right to the remainderman: "Any person or persons having an interest in remainders or reversion in real estate shall be entitled to all the rights and benefits of this act."  Upon the termination of the prior estate, those who were remaindermen or reversioners cease to hold the title by that description, and would fall within the class referred to in section 57, *supra*.  We have held the action could be maintained before the surviving spouse departs this life.  *Holmes v. Mason,* 80 Neb. 448. We also held in said case that the statute of limitations bars that right unless exercised within ten years of the time the cause of action accrues, the heirs being adults. It is said that the action may still be maintained by all the heirs of Anna E. Hobson because commenced within ten years of the date the youngest child attained his majority; that the cause of action is an entirety and cannot be severed, and, hence, good as to one is good as to all.  *Thompson v. Wiggenhorn,* 34 Neb. 723, is cited to sustain this proposition.  In that case an infant had the right to rebuild a burned mill, whereas, if he had been an adult at the time his ancestor died, he would have forfeited that privilege.  The other heirs of the deceased were adults when the father died, and it was held the forfeiture could not apply to one joint owner, and not to the others, because the two buildings could not at the one time occupy the same space, and, if the statute worked a forfeiture as to the adults, and not as to the infant, the impossible condition of two persons or sets of persons each having the exclusive right to construct a building within the same space at the same time would exist.  The rule does not apply in the instant case, because each one of two or more tenants in common may maintain a separate action for the protection or recovery of his estate, and he may not litigate as to other than his own interests in the land.  *Johnson v. Hardy,* 43 Neb. 368.  We are also

cited to authorities holding that the statute does not commence to run against the remainderman or reversioner until he has a right of entry, and this we do not deny as to actions for the possession of real estate. *Allen v. De Groodt,* 98 Mo. 159, 14 Am. St. Rep. 626, and monographic note commencing on page 628; *Smith v. McWhorter,* 123 Ga. 287, 107 Am. St. Rep. 85; *Hanson v. Ingwaldson,* 77 Minn. 533, 77 Am. St. Rep. 692; *McCorry v. King's Heirs,* 3 Humph. (Tenn.) 267, 39 Am. Dec. 165.

The administrator's deed and the record thereof created a cloud on the remaindermen's title, and gave plaintiffs a cause of action in equity against defendants Huxtable. Preceding the father's death no relief other than an adjudication that the farm was a homestead, that the deed was void, and quieting title in plaintiffs as against the Huxtables, could be given by the court. With the added allegation and proof of the father's death, the court could place plaintiffs in possession of the real estate. It was held in *Albin v. Parmele,* 70 Neb. 746, that in an equitable action to set aside a deed, where the right of possession was in issue and dependent upon the principles of equity that must necessarily be determined by the court, it was the duty of the court to determine the right of possession, and, if all parties in interest were before the court, to put the party who is entitled thereto into possession. The court therefore had power to and, upon proper terms, should quiet in each plaintiff his title to an undivided one-fourth part of said land, and to award them possession thereof. More than ten years intervened between the majority of defendants Ida Belle Busby and George W. Hobson, on the one hand, and the commencement of this action, on the other, so, therefore, the statute of limitations barred said defendants' action to quiet their title to the real estate involved herein. *First Nat. Bank v. Pilger,* 78 Neb. 168; *Holmes v. Mason,* 80 Neb. 448. The court therefore erred in quieting their title to said real estate. However, they were before the

court demanding possession of their part of the land, the only relief they were entitled to, and the court had the right to award that possession, but only upon equitable terms. *Albin v. Parmele, supra.* Counsel argue that the allegations in the answer and cross-petition of the defendants George W. Hobson and Ida Belle Busby are insufficient to state a cause of action against the Huxtables. A litigant may assert, on rehearing, or at any preceding stage of the litigation, that the petition will not warrant equitable relief, or that it does not state facts sufficient to constitute a cause of action in favor of the petitioner. *Vila v. Grand Island E. L. I. & C. S. Co.,* 68 Neb. 233. All the allegations in the petition are admitted in the answer and cross-petition. The interests of said defendants in said real estate are alleged in an indefinite manner. The claim is made that the cross-petitioners are entitled to the immediate possession of the real estate and are kept out of that possession by their codefendants Huxtable, and judgment is asked ejecting the Huxtables and their privies from said land. Considering the allegations of the petition and cross-petition, defendants Huxtable were advised of the nature and extent of the claim made by the Hobson heirs, plaintiffs and defendants; that plaintiffs prayed for equitable relief and possession of the real estate, and the defendant heirs the possession only. The court will read the petition and cross-petition together, and the allegations in the first pleading may aid the lack thereof in the other. *Neal v. Foster,* 34 Fed. 496; *Railway O. & E. A. Ass'n v. Drummond,* 56 Neb. 235. The court subrogated Huxtables to the rights of the mortgagors, McKinley-Lanning Loan & Trust Company and Carnahan, but we think it should have gone further and made the right to a writ of ouster in favor of the Hobson heirs, or any of them, conditioned upon the payment to the Huxtables of the $2,400 of Huxtables' money that was used to pay off those mortgages, with 7 per cent. interest added from June 18, 1905, the date John H. Hobson, the surviving spouse, departed this life. To merely subro-

gate the Huxtables to the rights of the mortgagors, whose liens had matured more than ten years past, would be a snare and a delusion. 3 Pomeroy, Equity Jurisprudence (3d ed.), secs. 1219-1221; *Henry v. Henry,* 73 Neb. 752. Huxtables' counsel argue that interest should be computed on the mortgages from the date they were paid. This we do not consider equitable. Huxtables will not be charged with rent prior to the death of the life tenant, and we do not think they should recover interest during that period.

4. The trial judge rendered judgment against defendants Huxtable for the rental value of the farm for the year 1905. This was error. The Huxtables either succeeded to the rights of John H. Hobson, the surviving spouse, in said farm, or by adverse possession extinguished those rights, and during his lifetime had the right to the rents and profits thereof. John H. Hobson died on the 18th day of June, 1905. In 1905 Huxtable raised 50 acres of wheat, 15 acres of oats, 50 acres of corn, and 15 acres of timothy and clover on said farm; the remainder of the land being used for pasturage and other purposes. The record is silent as to the date said annuals were planted, but we are safe in assuming the crops had not only been planted before but were growing at the date referred to. Defendants Hobsons' answer and cross-petition was not filed till July 19, and the supplemental petition September 6, 1905. In any event, Huxtable had the right to mature, harvest and remove his crops. *Edghill v. Mankey,* p. 347, *post.* Whether, upon a proper issue tendered and definite proof in support thereof, the Hobson heirs could have recovered for the use and occupation of the land for that part of 1905 subsequent to their father's death, we do not determine, but certainly the burden was not upon Huxtables to furnish any evidence upon this issue. The Hobson heirs tried the case upon the theory they were entitled to rents for the entire year, and all their evidence referred to the value of the use and occupation and of the rents and profits of said

land for the year 1905, and it is impossible to ascertain from the record the value of the use and occupation of the farm for said fraction of a year. While we might remand the case for that inquiry, we are not inclined to do so, but rather to enter a decree in this court and thereby determine this litigation, saving to Huxtables their rights and remedies under the occupying claimant's law.

It is therefore recommended that the former opinion of this court and the decree of the district court be vacated; that a decree be rendered in this court in conformity with this opinion; that the Huxtables pay the costs in the district court and the Hobson heirs pay the costs in this court, and that a special mandate issue to the district court for Adams county to carry this judgment into execution.

CALKINS, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the former opinion of this court and the decree of the district court are vacated, and a decree will be rendered in this court in conformity with this opinion; that the Huxtables pay the costs in the district court, and the Hobson heirs pay the costs of this court, and that a special mandate issue to the district court for Adams county to carry this decree into execution.

JUDGMENT ACCORDINGLY.