CHARLES A. CURRIER, APPELLEE, V. SETTY SCHMIDEKE TESKE ET AL., APPELLANTS.

FILED JANUARY 16, 1913. Nos. 16,859, 16,862.

1. **Mortgages:** FORECLOSURE SALE: INTEREST CONVEYED. The sale of an interest in real estate on foreclosure of a mortgage can only convey the interest of the mortgage debtor, and where he only owns a life estate that is all that is sold, although the purchaser may have supposed he bought and acquired the whole title.

2. **Ejectment:** LIMITATIONS: REMAINDERMAN. When the mortgage debtor whose life estate had been sold at the mortgage foreclosure died, the title vested in the purchaser at the mortgage foreclosure sale terminated, and the remainderman owning the fee was then entitled to bring his action in ejectment for possession.

3. **Mortgages:** FORECLOSURE SALE: RIGHTS OF PURCHASER. Where the decree in a case of mortgage foreclosure upon real estate is against the mortgage debtor and his interest in the premises is sold under the decree to satisfy the same, the purchaser at the foreclosure sale will not be deemed to have purchased any greater interest in the premises than that which was appraised and offered for sale; and, where the mortgage sale satisfied only the mortgagor's debt, the purchaser will not be deemed to have acquired any right against an interest in the land which belonged to another who was not made a party to the suit.

APPEAL from the district court for Madison county: ANSON A. WELCH, JUDGE. *Reversed.*

*John J. Sullivan* and *M. D. Tyler,* for appellants.

*William V. Allen* and *Willis E. Reed, contra.*

HAMER, J.

This is not the original case reported in 82 Neb. 315, and on rehearing in 84 Neb. 60, although the facts were the same, with one exception hereafter stated. That case was an action of ejectment, and this case is an action of ejectment, and the names in each case are the same; but that case was brought by the plaintiff in this case during the lifetime of Eugene R. Currier, the plaintiff's father, and Eugene R. Currier's interest had been sold under foreclosure proceedings, which are set out in the case referred to. He had owned a life estate in the property in controversy, which the defendants in that case purchased, and the interest which they held expired when Eugene R. Currier died, October 17, 1901. In that case it was held that the action of ejectment was prematurely brought, for the reason that when it was commenced Eugene R. Currier was still alive.

In the instant case the plaintiff and appellee, Charles A. Currier, who is also cross-appellant, brought ejectment in the district court to secure possession of the N. W. $\frac{1}{4}$, section 30, township 21 N., range 1 W., in Madison county. The petition was filed April 17, 1909. Before February 10, 1874, Eugene R. Currier entered the land above described, and on that day received the patent for the same. On the 20th day of September of the year before, he conveyed the land by deed to his wife, Mary J. Currier, in consideration of the sum of $1. They occupied the land together as their homestead. October 2, 1873, she and her husband, Eugene R. Currier, mortgaged the land to one John Campbell to secure a promissory note for $300. The note was not paid, and about March 2, 1881, Campbell began an action to foreclose this mortgage. Before this time the owner of the fee, Mary J. Currier, had died. In the foreclosure suit her son, Charles A. Currier, the plaintiff herein, was not made a party defendant, but Eugene R. Currier, the survivor of Mary J. Currier, was made a party defendant, and service upon him was had by publication, and a decree of foreclosure against him was rendered for $367.87. An order of sale was issued under this decree January 14, 1881, and the "interest of Eugene R. Currier, defendant," was appraised at $740.07, after deducting taxes as per county treasurer's certificate of $59.93. This appraisement of the "interest of Eugene R. Currier, defendant," was made July 5, 1881, under an order of sale directed against the land described, "taken as the property of Eugene R. Currier to satisfy a judgment * * * against the said Eugene R. Currier and in favor of John Campbell." The note sued on is described in the petition as signed by Mary J. Currier and E. R. Currier, and the petition recites the following condition alleged to be in the mortgage: "That, whereas said Eugene R. Currier has executed and delivered to John Campbell one promissory note for the payment of $300; now, if the said Eugene R. Currier shall pay to said John Campbell said sum of money or to his heirs and assigns when the same shall be-

come due, according to the terms and effect of said note, then these presents shall be null and void, otherwise to be and remain in full force." The petition also alleged that "the defendant (Eugene R. Currier) has not paid the amount secured by said mortgage as required by the conditions thereof, whereby said mortgage deed has become absolute." The prayer is "that said defendant may be foreclosed of all equity of redemption or other interest in said mortgaged premises." The legal notice published in the newspaper is addressed "to Eugene Currier, nonresident." It undertakes to notify the "defendant" that plaintiff "prays for decree that defendant be required to pay," etc. The judgment is against "Eugene Currier." The confirmation of sale is against "Eugene Currier." There was a default upon the part of Eugene Currier to pay his debt. In consequence of this default, the decree was rendered against him. The order of sale was issued because he did not pay and satisfy the decree. Under the order of sale it was "the interest of Eugene Currier" in the land that was appraised and sold. That interest was Eugene Currier's life estate. It sold for $500 to John Campbell, by his agent, F. W. Barnes. If Eugene Currier's life estate in the land sold for enough to pay Eugene Currier's debt as evidenced by the decree, then is there any debt? Seemingly it sold for enough to pay the debt. When the plaintiff's mother died, he inherited the fee from her because she owned the land at the time of her death. When John Campbell purchased the life estate of Eugene Currier at the sheriff's sale, Eugene Currier was thereby divested of such life estate, and the interest sold would have become John Campbell's property but for the fact that the title was taken in the name of Herman Schmideke, through an arrangement with Barnes and Tyler by which they furnished the $500 for Schmideke, and he apparently was substituted for John Campbell, probably by John Campbell's consent, and by the acquiescence of everybody, but not by an order of the court, and the sheriff's deed was then made to Herman Schmideke and John Campbell

has made no objections since that time.  This sheriff's deed bears date November 28, 1881, and by it Herman Schmideke then became entitled to the possession of the land during the life of Eugene Currier, who, as already said, died October 17, 1901, and his debt should have terminated the right of possession of Herman Schmideke as to the plaintiff, who had been the owner of the legal title since his mother's death, and he, by the death of his father, then became entitled to the possession of the land.  The return of the sheriff must have advised the court that the bid made by Campbell was confirmed, and a fair inference from the facts is that Schmideke was substituted in his place by consent of the parties as the purchaser, and that he paid the amount of Campbell's bid, because his name appears in the sheriff's deed as grantee.  It would seem that the judgment was then extinguished by what was done.

In *Currier v. Teske*, 84 Neb. 60, it was held: "That the sale on foreclosure could only convey the life estate of the defendant, even though the purchaser may have believed he acquired the whole title."  This would seem to be too apparent to require a decision.  In any event it was so determined in that case.  In the same case it was also held: "That an assignment of the bid and purchase will be presumed, and the sheriff's deed will be held sufficient to pass all the rights of the original purchaser to the grantee."  It was also said by Judge LETTON, delivering the opinion of the court:  "Eugene Currier died October 17, 1901.  The defendants' estate and right of possession were contemporaneous with Currier's life, and died with him.  This action in ejectment (the old action) was begun nearly ten months before the death of Eugene Currier, and while the defendants were fully entitled to possession of the land.  Proper service was had upon all the defendants except Walter Schmideke.  As to him, the first service was quashed, and a new summons was served in 1906 after the termination of the life estate."  The judgment of the district court in

the former ejectment case brought by Charles A. Currier was in favor of the defendants, and properly so, because Eugene R. Currier was still living, and it was his interest, a life estate, that was purchased under the original foreclosure proceedings. Of course, until Eugene R. Currier died, it must be taken that Charles A. Currier could not successfully maintain his action of ejectment. *Hobson v. Huxtable,* 79 Neb. 340. The present action was brought after Eugene R. Currier died.

Judge LETTON, in the opinion, discusses the effect of the sale that took place, and he says: "The proceeds of the defendants' interest, therefore, paid the mortgage debt and extinguished the lien on the plaintiff's equity of redemption. So that, when Campbell sold to Schmideke, he sold the life estate which he had foreclosed upon and purchased and that alone." He further says: "The purchaser at a foreclosure sale must advise himself of the title he buys, and when the real owner of the fee is not made a party he cannot deprive him of any of his rights by the purchase." The doctrine here laid down in the former case would seem to dispose of the present case. The former case was about the same land, between the same parties, and it failed simply because Eugene R. Currier was still living, and therefore the estate of the defendants was not yet terminated, being contemporaneous with the life of Eugene R. Currier.

In the same case Judge LETTON says: "The evidence indicates that one Frank Barnes of Madison had been acting as Mr. Campbell's agent in the matter of the mortgage, and that prior to the sale he had also been negotiating with Mr. Schmideke for the sale of the land to him. Mrs. Teske says he was to buy the land for her then husband, Schmideke, and that Barnes procured the sheriff's deed to Schmideke and delivered it to him. The sheriff's deed recites that Schmideke was the purchaser at the sale. Under these circumstances, after the lapse of so many years, and considering that Campbell never made any claim that the deed was void, and through his agent accepted and re-

tained the purchase money and caused the deed to be made to Schmideke, it will be considered that he became by equitable assignment the owner of Campbell's interest in the bid, that the deed was made pursuant to such assignment, and that he thereby became vested with all interests that Campbell then had." In the same case Judge LETTON says, referring to the district court: "The court did not err in directing a verdict for such defendants. This, however, does not constitute a bar to an action brought within the statute of limitations to recover the possession of the land." It will be seen that this court, in disposing of the former case, took occasion to declare that what was then being done would not constitute a bar to a subsequent action by Charles A. Currier to recover possession of the land. As the writer understands, what has heretofore been done in this case leaves an open field for the plaintiff to assert his right to the land and to recover possession of it.

We will consider some of the contentions made by the appellants.

1. It is contended that the right of Charles A. Currier was the right to redeem; that he was the owner of the remainder in the premises after the termination of his father's life estate; that upon the whole estate there was a valid mortgage, and that the burden of keeping down the interest upon this mortgage rested upon the owner of the life estate, but that the burden of paying the mortgage itself rested upon the owner of the remainder. *Tindall v. Peterson,* 71 Neb. 160, 166, and *Downing v. Hartshorn,* 69 Neb. 364, are cited in support of this contention, as, also, 2 Pomeroy, Equity Jurisprudence (3d ed.) sec. 1223. In *Tindall v. Peterson, supra,* there was an appeal from a decree quieting title in the plaintiffs. One Thomas Tindall had died intestate seized in fee of the land in controversy, subject to two mortgages. At the time of his death the land was occupied as a homestead by himself and his family. When the widow applied to the district court for a license to sell the homestead, or so much thereof as

might be necessary to pay the mortgage debt, and such order was granted and the homestead was sold, it was held that the proceedings were void—"that a sale of the homestead by an administrator, under a license for the payment of debts, is without authority of law." In *Downing v. Hartshorn, supra,* there was also a consideration of the homestead question. The cases cited are unlike the case at bar, because in the instant case the debt was the debt of Eugene R. Currier, and the purchaser at the mortgage sale was bound to take notice of what he purchased. He knew that he only purchased Eugene R. Currier's life estate, and that he was not purchasing the legal title held in the first instance by Mary J. Currier, and after her death by her son, Charles A. Currier. If there was an obligation upon the part of the owner of a life estate to pay the mortgage, and he has paid the same through foreclosure, his grantee through foreclosure is entitled to nothing more than what he bought. This court said in *Tindall v. Peterson, supra:* "We are of opinion that justice, as complete as possible, will be done between the parties, by so modifying the former decision of this court as to charge the appellants, as of the date when the first mortgage was paid off, with a sum equal to the then present value of the amount of interest the life tenant, the mother, would have been required to pay during the actual continuance of her life, as shown by the record." The material difference between the cases cited and the instant case is that, in the instant case, the owner of the life estate was also a debtor. He was directly indebted to the plaintiff, John Campbell, in the mortgage foreclosure case, and the mortgage was foreclosed against him, Eugene R. Currier, and not against any one else, and the title of the owner of the fee was freed from the lien of the mortgage by such foreclosure. When Eugene R. Currier's life estate was sold, it was sold to pay his own debt. It was sold to pay a judgment against him. Eugene R. Currier did not object to paying his own debt. Can anybody object for him, when he himself neglects to object?

2. It is also contended that Charles A. Currier, the plaintiff, cannot assail the title of the defendants obtained through the foreclosure without first redeeming, or offering to redeem, and in support of this proposition *Loney v. Courtnay*, 24 Neb. 580, is cited. In that case it was said: "Where a sale was had under a void foreclosure of a mortgage of real estate, and a sheriff's deed· executed, *held,* that the mortgagor in an action to cancel the deed as a cloud upon his title must offer to do equity by paying what is equitably due under the decree, with interest and taxes." In that case the foreclosure was void, or voidable, and there was a sale under a void or voidable decree. In the instant case the foreclosure is not void. · It is valid. But it covered only the life estate of Eugene R. Currier, and that only was sold, therefore *Loney v. Courtnay* is not in point. *Hall v. Hooper,* 47 Neb. 111, is also cited. In that case the foreclosure is against a deceased person. The mortgagee was in possession under a void foreclosure sale. In *Stull v. Masilonka,* 74 Neb. 309, it was held that if a valid real estate mortgage has been foreclosed, even though the proceedings are void, the mortgagor will not be heard to question the title acquired thereby, unless he pays or tenders the amount of the debt and interest. But in that case the purchasers under the foreclosure, or their grantee, were in possession. The extent to which these cases go is that the foreclosure, though void or voidable, operates as an assignment of the mortgage foreclosed, and that the mortgagor cannot question the regularity of the decree as to one in possession under such foreclosure, without attempting to redeem, Along the same line is *McCabe v. Equitable Land Co.,* 88 Neb. 453. But the cases cited are not analogous to the instant case. In the instant case the foreclosure was valid in so far as it sold the life estate of Eugene R. Currier. That was all that was attempted to be foreclosed. But it was not claimed that the foreclosure was void for any reason. It was valid in any event as to Eugene R. Currier. The owner of the legal title, Charles A. Currier, did

not have to be made a party in order that there should be a legal foreclosure of the life estate held by him, and Charles A. Currier was not made a party and his ownership of the legal title to the land was not sought to be foreclosed. In all the cases cited, the debt under which the foreclosure proceedings were had was not the direct debt of the mortgagor under which only his property was foreclosed and sold, leaving no claim against any other property, as in this case. *Kelso v. Norton*, 65 Kan. 778, 70 Pac. 896, is also cited. In that case it was held that when the mortgagor surrenders possession of the premises to a purchaser at a void foreclosure sale, and the purchaser enters into possession believing himself to be the owner of the premises, the mortgagor will be deemed to have waived his legal right to retain possession and to have assented to the possession thus taken, and the purchaser will henceforth be deemed to be "a mortgagee in possession." But that case is not at all parallel with this one. In the instant case there was no foreclosure against Charles A. Currier. He has all the rights that he ever had. He could have waived nothing, because he was not brought into court, and is not shown to have had any knowledge whatever of the proceedings. Neither can it be said that Charles A. Currier was a debtor to the plaintiff in the mortgage foreclosure proceedings. Eugene R. Currier was a debtor, and the proceeding was against him, and his property properly paid the debt after a decree had been rendered against him, and he never complained about it.

3. It is also contended that Herman Schmideke became the owner or transferee of every right and interest of all the parties to the suit. In support of this proposition *Young v. Brand*, 15 Neb. 601, is cited, and it is alleged: "The purchaser under a decree of foreclosure of a mortgage obtains the title of all the parties to the suit, whether their title be that which is set forth in the pleadings or not." To this it may be said that Charles A. Currier was not a party to the suit brought against Eugene R. Currier.

It would not seem that it ought to be seriously contended that a purchaser under a decree of foreclosure obtains the title to that which is not sold or attempted to be sold. Charles A. Currier's inherited title to the land was not sold or attempted to be sold. Some other cases are cited along this line, but they do not seem to be analogous. No greater interest could be sold than the court got jurisdiction of. The thing which the court got jurisdiction of was the life estate of Eugene R. Currier. When the decree was rendered against him it became a lien on the interest which he had in the premises, and at the sale all the interest he had in the premises was sold to John Campbell. When the return of the sheriff showed the sale to John Campbell and the payment of the money, John Campbell was placed in a position where the deed from the sheriff might be made to him, but by his willingness, and because of the fact that Schmideke paid in the $500 out of which John Campbell received enough to pay the debt which Eugene R. Currier owed to him, the debt and mortgage were extinguished, and Herman Schmideke's name was substituted in the sheriff's deed instead of John Campbell's. Of course, if John Campbell had insisted in court that the deed should be made to him, the court would have so directed the sheriff, but in that event John Campbell would not have received the money. Suppose that after John Campbell received the money he had insisted that the deed should be made to him, would the court have directed the sheriff to so make the deed, and would the court have allowed John Campbell to hold both the interest in the land and the money? Appellants are contending in this case that Schmideke purchased more than John Campbell had to sell if the deed had been made to Campbell instead of being made to Schmideke. This would hardly seem to be a reasonable position.

4. It is said on behalf of the defendants that Charles A. Currier will not be permitted to redeem because his right to redeem is barred; that he became 21 years of

age in December, 1890, and that he could have commenced an action at that time to redeem. To this the answer is that if under the decree against the father, Eugene R. Currier, his interest in the property was sold and paid the debt, there is no necessity for redemption because there is no debt to redeem from.

5. It is said in appellants' brief that Schmideke went into open, notorious and adverse possession of the premises in 1881, and through himself and his heirs has been in such possession ever since. It is then contended that Charles A. Currier might have maintained an action to redeem at any time after he became of age. He certainly did not have to redeem if the mortgage had been satisfied in a proceeding against his father and by a sale of his father's life estate in the premises. But there is a discussion of the right of redemption, and it is claimed that there is a bar to any proceeding upon the part of Charles A. Currier, the plaintiff. The action which Charles A. Currier brings is ejectment. He inherited the title from his mother. No proceedings have been had against him by which that title has become divested. The statute did not begin to run against him as to the right to maintain ejectment until his father died. The statutory ten years necessary to constitute a bar have not elapsed.. There is therefore no bar to his maintaining the action brought. In *Hobson v. Huxtable,* 79 Neb. 340, this court held: "The remainderman's estate in the homestead will not support an action in ejectment during the lifetime of the life tenant, and the statute of limitations will not commence to run against that possessory action until the demise of the surviving spouse."

6. It is next contended "that, as the legal title to an undivided one-half interest in the premises was in William V. Allen and Willis E. Reed, the plaintiff could recover only an undivided one-half interest. This was right. The record shows conclusively that Charles A. Currier has deeded an undivided one-half interest in the premises to Allen and Reed, and that this deed stands of record in

Madison county." Charles A. Currier testifies: "I have deeded away a half interest in the land to cover the costs of this suit and attorney fees." Further on it appears from his evidence that, if Allen and Reed should be paid a sum of money equal to one-half the value of the land, they would reconvey the land to the plaintiff. The conveyance was therefore made to secure fees, expenses and costs.

In the recent case of *Helming v. Forrester*, 92 Neb. 284, this court held, as announced in the syllabus: "Where parties entitled to the possession of land, in arranging for the commencement of an action to recover such possession, execute to their attorneys a quitclaim deed to an undivided half of such land under an agreement that such deed is to be held as security only for the services to be rendered by such attorneys in their behalf, such deed is in effect a mortgage, and does not render it necessary to join the grantees therein named as plaintiffs in such action." In that case there was the same objection to a judgment for the plaintiffs that there is in the instant case. They had executed to their attorneys a quitclaim deed "to an undivided one-half of the land in controversy." This was held in effect to be a mortgage, and not a bar to a judgment for the plaintiffs. In the concurring opinion in that case it was said: "The quitclaim deed given in the instant case was treated by the parties to it as a mortgage, and was so intended by them. We know of no reason why the defendant should be allowed to have it considered as an absolute conveyance contrary to the intention of the parties to it."

7. It is said in the brief of counsel for appellants: "A foreclosure sale of lands and tenements, unless the decree otherwise provides, transfers to the purchaser every right and interest in the property of all the parties to the action"—citing *Hart v. Beardsley*, 67 Neb. 145, and *Arterburn v. Beard*, 86 Neb. 733. That Charles A. Currier was not a party to the action brought against Eugene R. Currier disposes of the contention. Nothing belonging to Charles A. Currier could be sold, or was sold, in the

proceeding to which he was not a party, and in a case where the judgment was against another.

At the same time it is proper to call attention to the fact that the cases cited have nothing in common with the instant case. In *Hart v. Beardsley, supra,* the mortgagor, Hart, had made two mortgages. One was for $1,800 and one was for $500, and the latter mortgage recited that it was "subject and second to a mortgage hereinafter to be given for $1,800." In the decree of foreclosure the $1,800 mortgage was declared a first lien, but in selling the property the appraisers erroneously deducted the $500 mortgage from the appraised value of the premises sold. The decree itself showed that the $1,800 mortgage was a prior lien, and therefore the $500 supposed lien should not have been deducted. In *Arterburn v. Beard, supra,* this court held that, where property had been sold and the defendants at the time of the sale were in full possession of an easement relating to irrigation, and the plaintiff purchased the premises, he took the property with notice of the easement, and that he did not purchase the right of action which belonged to the former owner, and that the same did not pass by the deed. As we view the case, the contention of counsel for the appellants, if successful, would enable the heirs to real estate to be sold out and dispossessed of every interest, without being made parties and without being brought into court in any way.

In *Tindall v. Peterson,* 71 Neb. 166, it is suggested: "That the right of contribution is personal to the life tenant and expires with the termination of her estate, or, at most, survives to her personal representative, and cannot be availed of by her successors in the possession of the premises." It is assumed by the opinion that this is true. If it is, the appellants have no standing. But, whether true or not, it is unnecessary to discuss the question. If the life tenant was the debtor, and the judgment was against the life tenant, and it was extinguished by the sale of the life tenant's interest in the premises, the

life tenant himself or his successor in interest may not complain. The contention made seems to ignore the actual condition of the case.

This is a consolidation of numbers 16,859 and 16,862. There is only one bill of exceptions and one abstract and one set of briefs for the two cases. The petition in No. 16,862 is shown by the abstract and transcript to have been filed on the 17th day of April, 1909, and the petition in No. 16,859 seems from the transcript to have been filed on the same day. The cases seem to have been tried together in the district court. The same judgment is shown by the abstract to have been rendered in each case. The journal entry in the district court shows that one of these cases in that court was numbered 3,185 and the other was numbered 3,907, and that they came on for hearing upon the motion to consolidate both cases, and by agreement of parties in open court they were consolidated; No. 3,185 being consolidated with No. 3,907. At the close of the evidence in the trial in the district court, the plaintiff moved to enter judgment in favor of the plaintiff, awarding him possession of the land in suit and the damages as shown by the testimony and stipulation of the parties, and to find that he had a legal estate in the land in controversy and was entitled to the present and immediate possession thereof. The motion was overruled. There seems to have been no controversy over the fact that the plaintiff was the son of Mary J. Currier, and therefore he must have inherited whatever interest she had. She is shown by the record to have owned the fee to the land, subject only to the life estate of her husband. When she died the plaintiff immediately became the owner of the land, subject to the termination of the life estate of Eugene R. Currier, which had been purchased by Herman Schmideke at the mortgage foreclosure sale.

We think that, since the testimony was undisputed that the conveyance to Allen and Reed was intended as a mortgage and was a mere lien or security on the land for the payment of fees and expenses, the district court erred in

submitting that question to the jury. The verdict was wrong in giving only an undivided one-half interest in the premises to the plaintiff. The plaintiff seems to be entitled to recover possession of the whole of the premises according to the prayer of the petition. The judgment of the district court is reversed and the case is remanded for further proceedings in accordance with this opinion.

REVERSED.

BARNES, J., took no part in this decision.

SEDGWICK, J., dissenting.

The purchaser of land at a sale upon foreclosure of a mortgage takes the interest of the plaintiff as well as the defendant. If one who is not a party to the suit has an equity of redemption, that equity is subject to all the rights that the purchaser has by his purchase, including the lien of the mortgage foreclosed. In such case, if the purchaser takes possession of the land, he becomes a mortgagee in possession. As against the holder of the equity of redemption he must apply the rents and profits of the land in satisfaction of the mortgage and interest thereon. The statute of limitations will run against an action to redeem. Ejectment cannot be maintained against a mortgagee in possession.

The petition in foreclosure described the land. The order of sale directed the sheriff to sell the land itself, and not a life estate. The sheriff published the notice that he intended to sell the land, and reported that he had done so. The court ordered that the sheriff "convey to the purchaser, John Campbell, by deed in fee simple, the lands and tenements so sold." The sheriff's deed described and conveyed the land itself, and not a life estate. The conclusion that the life estate of Eugene R. Currier alone was sold is derived entirely from the statement in the appraisement that "the interest of Eugene R. Currier, defendant, we value at $740.07." The appraisement describes the land, and says that the land is valued at the

sum of $800; that the taxes thereon are $59.93. They deducted these taxes from the total value of the land, and appraised the remainder as the interest of Eugene R. Currier; that is, they appraised the land itself as the land of Eugene R. Currier. They were clearly justifiable in doing this, as there was nothing in the record of foreclosure indicating that Eugene R. Currier had only a life estate in the land. They considered that the land belonged to Eugene R. Currier, and therefore his interest was the value of the land, less the taxes due thereon.

The attempt was to foreclose the mortgage and sell the land, and, so far as they sold anything, it was the land itself. This sale did not foreclose the plaintiff's equity of redemption, because he was not a party to the proceeding. His right to redeem remained after the sale the same as it was before, and he might have exercised that right at any time within the statute of limitations.

If the defendant in the foreclosure had held a mortgage upon the land, or a quitclaim deed of an undivided portion, the reasoning of the majority opinion would have led to the same erroneous conclusion.

FAWCETT, J., concurs in the above dissent.