[No. 11779.   Department Two.   August 15, 1914.]

Harriet Stahl et al., *Appellants*, v. Lulu Schwartz, *Executrix etc.*, *Respondent*.

*In the Matter of the Estate of* Catherine E. Stahl.[1]

Executors and Administrators—Debts and Expenses—Payment From Income or Corpus of Estate—Rights of Life Tenant—Waiver. Where a life tenant, pursuant to an agreement with his coexecutor, paid claims and expenses of administration in part out of the income and in part out of the corpus of the estate, his heirs cannot question the validity of the payments on the ground that they were properly payable out of the corpus of the estate and should be charged thereto, the life tenant making no claim that he was advancing funds for the use of the estate, or expecting repayment, and it clearly appeared that he was fully advised of his rights to one-half of the income and his administrator's fees, and that he was voluntarily acting as he believed for his best interests.

Life Estates—Life Tenant—Contract With Coexecutor—Validity. An agreement between a life tenant and his coexecutor to use his share of the income from the estate to pay the debts and obliga-

[1]Reported in 142 Pac. 651.

tions of the devisor is not void for want of consideration, but only voidable, and his heirs cannot repudiate consummated transactions thereunder, in the absence of a showing that he was innocent of his rights in the premises.

SAME — IMPROVEMENTS BY LIFE TENANT — PERMANENT REPAIRS. While a life tenant is only bound to keep the premises in repair, and is under no obligation to undertake improvements, his making of permanent improvements on the estate is presumed to be his voluntary act, and gives him no claim against the reversioner for payment of any part of the cost of the improvement.

SAME—BUILDINGS OF ESTATE — INSURANCE PREMIUMS — PAYMENT FROM INCOME. The cost of insuring buildings belonging to an estate is properly chargeable to the income of the estate, where the buildings are of immediate benefit to the life tenants, their principal income being derived therefrom, and the evidence shows that their usefulness will not benefit the remainderman, but will, in all probability, be destroyed by the elements before termination of the life tenant's estate.

SAME. Premiums on insurance policies covering buildings subject to a life estate are properly chargeable to the income thereof, on the theory that it was the purpose of the testator that the corpus of the estate should remain intact until the termination of the estate for the benefit of the remainderman.

SAME—STREET IMPROVEMENTS—ASSESSMENTS—PAYMENT FROM INCOME OR CORPUS OF ESTATE. Assessments charged against property subject to a life estate in the income thereof, for benefits from street paving, are properly apportioned between the corpus of the estate and the income, two-thirds to the former and one-third to the latter, where it appears that, while a portion of the improvement is of a permanent nature, the wearing surface will have to be renewed at the end of ten or twelve years, being in the nature of repairs or upkeep and a proper charge on the income, the improvement being forced upon the estate by operation of law and hence not governed by the rule of voluntary improvements; and the fact that part of the improvements affected vacant property producing no income, would not render the corpus of the estate liable for the whole costs thereof, the duty of the life tenant being the same as in the case of income bearing property to conserve the corpus of the estate for the benefit of the remainderman.

EXECUTORS AND ADMINISTRATORS—SETTLEMENT — EXPENSE — COST OF DEFENDING ACTION. An executrix and life tenant, personally interested in a contract, is not to be personally charged with the costs of defending an action on the contract, entered into by her in good faith in the interests of the estate as well as in the interest of the

parties to it, where the validity of the contract was debatable, and she exercised her best judgment in making the defense; but the same is properly charged against the income.

SAME—INHERITANCE TAX—PAYMENT. Heirs of a life tenant who, with his coexecutor, paid the inheritance tax due the state out of the income of the estate, cannot assert that the sum paid should be charged to the corpus of the estate, upon settlement of the final account of the surviving executrix, the payment having been made voluntarily and with full knowledge of their rights in the premises.

SAME—BUILDINGS OF ESTATE—PERMANENT IMPROVEMENTS—PAYMENT FROM CORPUS OF ESTATE. The cost of repairs to a building made by the executrix of an estate, subject to a life estate in the income, which repairs were of a permanent nature and changed the property from nonincome bearing to income bearing property, is properly charged to the corpus of the estate, the evidence showing that the building will probably inure to the benefit of the remainderman, but failing to disclose any basis upon which an apportionment could be made between the life tenants and the remainderman.

Appeal from a judgment of the superior court for Walla Walla county, Mills, J., entered May 29, 1913, upon findings in favor of an executrix, in the settlement of her final account, after a hearing upon a contest. Affirmed.

*Rader & Barker*, for appellant Stahl.

*John C. Hurspool* and *F. B. Sharpstein*, for appellants Lillian E. Schwartz *et al.*

*Dunphy, Evans & Garrecht*, for respondent Lulu Schwartz.

FULLERTON, J.—Catherine E. Stahl died, in Walla Walla county, on April 16, 1908, leaving the following will:

"I, Catherine E. Stahl, do make, publish and declare the following to be my last will and testament.

"(1) I direct the payment of all my just debts out of my estate.

"(2) To each of my grandchildren, Magdalene Louise, Ernest William and Henrietta, children of my deceased son, Henry Stahl, I give and bequeath ten thousand dollars, the said sum without interest to be paid to each of my said grandchildren on the arrival of each at the age of majority, should any of said grandchildren die before arriving at the age of majority but leave a surviving child or children, then said

child or children shall take by way of representation the share to which the parent would be entitled if living, and if any of my said grandchildren die without issue before arriving at the age of majority, I direct that the sum that such grandchild would have received had the age of majority been attained, be paid in equal shares to the remaining grandchildren, should two survive, and attain the age of majority; and in case but one of said grandchildren should survive to the age of majority, the other two have died without leaving issue as aforesaid, then said grandchild alone to take the full sums herein bequeathed to all of said grandchildren.

"(3)  I will and direct that none of my real estate be sold for five years after my death.

"(4)  I give, devise and bequeath unto my daughter, Lulu Schwartz, one-half of the remainder of my property of whatsoever character and wheresoever situated, of which I may die seized, to be hers absolutely.

"(5)  In the other half of all my property of whatsoever character and wheresoever situated, of which I may die seized, I will, bequeath and devise a life estate to my son, Frank H. Stahl.  After determination of said life estate, I will, devise and bequeath the remainder of said one-half of all my estate to any child or children of my said son, Frank H. Stahl, born to him in lawful wedlock after the date of this will, but should there be no such child or children born to him in lawful wedlock after the date of this will, or the issue of such child or children, I then give, devise and bequeath said remaining one-half of my said estate as follows:  One-half thereof to the children of my deceased son, Henry H. Stahl in equal shares and one-half thereof to the children of my daughter, Lulu Schwartz in equal shares, subject, however, to a trust to pay the income thereof to the surviving widow of my said son, Frank H. Stahl, during her widowhood, but should she remarry she is thereupon to be paid out of the trust estate, five thousand dollars and all the interest of said widow in said estate is thereupon to cease and be determined.

"(6)  The contingent provisions herein are not to be construed as either hindering the segregation of my estate or as preventing the same remaining intact after the year of administration, and to the end that the full share herein willed to my daughter, Lulu Schwartz, may be apportioned to her, I direct that at any time after the year of administration up-

on the request of my said daughter, Lulu Schwartz, my executors hereinafter named shall, and they are hereby granted full power and authority to apportion and distribute to her the proportion of my estate to which she is entitled under the provisions hereof.

"(7)  I nominate and appoint as the executors of this will, my children, Lulu Schwartz and Frank H. Stahl, and direct that letters testamentary issue to them and they execute this will without being required to furnish any bond or security; and I give unto my said executors full power to manage and control and in any way use and deal with any and all property of my estate during its administration without any application to any court for leave or confirmation.  I do also empower my said executors to continue any business conducted by me or dispose of the same on such terms as they may see fit.  In making investments or reinvestments or in conduction or continuing any business said executors are expressly authorized and empowered to proceed and act as they may deem wise and prudent; all without leave or approval of any court and without liability or responsibility for the consequences of their acts or for losses incurred as a result thereof.

"(8)  I hereby revoke all former wills made by me."

Mrs. Stahl left a considerable estate, which was immediately taken possession of by the executors named in the will, and administered by them jointly until the death of Frank H. Stahl, which occurred on October 28, 1909.  Frank H. Stahl left surviving him his widow Harriet Stahl, but no child or children born after the date of the will of Catherine E. Stahl. On the death of Frank H. Stahl, the surviving executrix entered into a contract with Harriet Stahl concerning the future management of the estate, which agreement was acted upon by the parties thereto until August 4, 1910, when Harriet Stahl began an action in the superior court of Walla Walla county against the surviving executrix, praying that the contract be set aside, that an accounting be had, and that she be paid such proportion of the income of the estate as she was justly entitled to receive under the provisions of the will.  Judgment went in her favor in the superior court,

and was affirmed by this court on appeal. *Stahl v. Schwartz*, 67 Wash. 25, 120 Pac. 856.

After the remittitur from this court reached the superior court, the executrix filed in that court an account with the estate, showing the then existing condition of the estate, and the receipts and expenditures on behalf thereof from the date of the death of Catherine E. Stahl to the date of the filing of the account. A hearing was had thereon, after due notice given, in which various objections were made to items of the account by Harriet Stahl, and by the guardians *ad litem* appointed by the court to represent the minor residuary legatees and devisees. At the conclusion of the hearing, the court entered a decree in which he allowed certain of the items objected to and disallowed others, and determined from what fund the several items of expenditure. should be paid; that is, whether from the income or from the corpus of the estate. Harriet Stahl appeals from certain portions of the decree and the guardians *ad litem* from certain others. These we will notice in their order.

Prior to her death, Catherine E. Stahl had inaugurated certain improvements upon her property which were only partially completed at the time of her death. She also was indebted in certain sums, and certain indebtedness was incurred as funeral expenses and as expenses in the administration of the estate preceding the death of the executor Frank H. Stahl. The executors, upon taking charge of the estate, caused the improvements begun by their devisor to be completed, and paid the cost thereof, together with the debts of the deceased, her funeral expenses, and the expenses of administration incurred prior to the death of Frank H. Stahl, in part out of the income and in part out of the corpus of the estate. There was, also, a building situated upon lands belonging to the estate which had been fitted up as a place in which to conduct a moving picture show. The executors found it impossible to secure a paying tenancy for the building as it was then fitted and caused the same to be refitted

as a store building, putting therein a modern front at a cost of $850. This sum the executors also paid out of the income of the estate. In the settlement of the account, the court allowed these items to stand charged to the funds out of which the executors had paid them; that is to say, such portion of the expenditures as the executors had paid out of the corpus of the estate he allowed to stand charged against the corpus of the estate, and such portions as they had paid out of the income he allowed to stand charged to the income. It is the contention of the appellant Harriet Stahl that these items were properly payable out of the corpus of the estate, and should be so charged; further contending that, if the· items be so charged, and Frank H. Stahl be given credit for his part of the income used in paying them, and he be given credit for his fees as executor, it will be found that the estate was indebted to him at the time of his death in the sum of $7,345, and she now asks that the several items be so charged and that she, as his heir at law, be paid that sum out of the estate by the surviving executor.

It is, perhaps, the rule that a devisee of a life estate in the income of property, where there are no words of explanation or limitation in the devise creating the estate, is entitled to the income without diminution by the payment of the debts, funeral expenses, and costs of administration of the estate of the devisor, and had Stahl in this instance been a stranger to the administration there would be foundation for the claim here made. But Stahl was one of the executors. He actively participated in the administration of the estate, and together with his co-executor selected the fund out of which the payments now in question were made. During his lifetime, he made no claim that he was advancing funds for the use of the estate, or that he expected repayment, nor is there any evidence in the record that he was ignorant of his rights in the premises. On the contrary, it directly appears, we think, that he was fully advised of his rights, and that he made the payments out of the funds selected pursuant to an agreement

with his co-executor, and was acting as he believed for his best interests. It does not follow that, because he could have taken for his own use one-half of the entire income, and his administrator's fees, he must do so. On the contrary, the income was his own to do with it as he pleased. He was at liberty to apply it on the debts and other obligations of his devisor if he so desired, and since the disposition made of it was voluntary on his part, and with knowledge of his rights in the matter, his heirs cannot lawfully question such disposition.

But counsel say that any agreement on the part of Stahl to surrender his income for the payment of his devisor's debts, her funeral expenses, and expenses of administration of her estate out of his share of the income therefrom is invalid for want of consideration, under the authority of *Stahl v. Schwartz*, before cited, and since Stahl could have repudiated the agreement, his heir may also repudiate it. But the agreement was, at best, voidable rather than void, and his heir cannot for that reason repudiate any consummated transaction had in pursuance of it; at least, without a showing that he was ignorant of his rights in the premises, and of this, as we say, there is no showing in the record.

There is, moreover, another general rule applicable to the payments made to complete the structures under way at the time of Catherine E. Stahl's death, and the expenditures made to remodel the building mentioned as being remodeled by the executors during the lifetime of Frank H. Stahl. This rule is that a life tenant who makes permanent improvements upon the estate of which he is tenant is presumed to have made them voluntarily. He is bound to keep the premises in repair, but is under no legal obligation to undertake improvements. If he does so, it is a voluntary act of his own, which gives him no claim against the reversioner for the payment of any part of the cost of the improvement. Tiedeman, Real Property (2d ed.), § 68. We reach the conclusion, therefore, that

Frank H. Stahl left no estate intermingled with the estate of Catherine E. Stahl that is collectible therefrom.

A part of the estate of Catherine E. Stahl consisted of city lots on which there had been erected substantial buildings, the rentals from which produced a considerable part of the income of the estate. These buildings the executors kept insured at about ninety per centum of their value. The insurance premiums were paid out of the income of the estate, and the court, in the settlement of the account, allowed them to be charged thereto. The appellant Stahl contends that these premiums should be apportioned between the income and the corpus of the estate. Her counsel argue that, since the evidence discloses that the life of these buildings is fifty years and the expectancy of life of the tenant is but thirty-four years, the life tenant should not be compelled to pay more than 34-50 of the cost of the insurance, and that the remainder should be charged to the corpus of the estate. The question whether the cost of insuring the buildings of the estate are properly chargeable to the income or the corpus of the estate was before the Court of Appeals of the State of New York in *Stevens v. Melcher*, 152 N. Y. 551, 46 N. E. 965. It was there said that the authorities on the question were not in precise harmony, although it was intimated that the differences arose because of the differences in the conditions and circumstances of the particular cases; the court holding, in the case before it, that the premiums were properly chargeable to the income of the life tenant and not to the fee of the remainderman. We think the true solution of this problem is found in the answer to the question, to whom will the benefit inure. If the insurance benefits solely the life tenant, then the tenant must pay the premiums; if to the remainderman, then he must pay it; if to both the tenant and remainderman, it must be apportioned between them.

Tested by this rule, we think the trial court properly charged these premiums to the income of the estate rather than to the fee. While no finding was made on the question

by the trial court, we think it fairly deducible from the evidence that the life of an ordinary building, such as were erected on the premises in question, is fifty years. Not fifty years from the date of the trial, as the appellant assumes, but fifty years from the date of their construction, which was more than sixteen years prior to the date of the trial. If this length of time be the true duration of the life of the buildings, it is plain that the remaindermen cannot reasonably expect benefit from the continuance of the buildings on the property. As the appellant's life expectancy is now thirty-four years, the elements will, in all probability, destroy their usefulness before the termination of the estate of the life tenant. On the other hand, the buildings are of immediate benefit to the life tenants. From their rental, is derived a principal part of the life tenants' income, which would be lost by the destruction of the buildings, and they, not the remaindermen, have the immediate interests.

Moreover, there is another general principle applicable to this class of expenses that must be kept in mind. This principle was stated by Judge Gray in *In re Albertson*, 113 N. Y. 434, 21 N. E. 117, in the following language:

"The usual purpose of the testator in providing for a beneficial interest in a trust estate is, that the net income shall be applicable only, and that the *corpus*, or capital, of the trust estate shall remain intact until the trust shall have determined. The principle has been so long and firmly established that interest on mortgages, taxes, repairs and all those current expenses, which are fairly incidental to the maintenance of the realty used by a life tenant, are payable by him, that it should be adhered to upon all occasions, unless, in so doing, we violate a plain direction to the contrary; which, if not found in the will in so many words, yet is the only one which a fair and reasonable construction permits of our finding."

Since, therefore, it is the policy of the law to keep the estate intact for the remaindermen, and since the benefit derived from the insurance will, under the doctrine of probabilities,

inure solely to the benefit of the life tenants, it is but just that they should bear its burdens.

The city authorities of the various cities in which parts of the estate is situated caused certain of the streets in their respective municipalities to be improved by paving the same and constructing concrete sidewalks thereon at the expense of property benefited. Parts of such improvements extended in front of property belonging to the estate, and assessments were levied or threatened against the several tracts benefited by the improvement. These assessments and threatened assessments the surviving executrix paid. The trial court heard evidence as to the character of the improvements, and in its decree apportioned the amounts so paid between the corpus of the estate and the income, charging two-thirds of such costs to the former and one-third to the latter. The court proceeded on the theory that a certain part of the improvement was not of a permanent nature. He concluded from the evidence that the concrete base of the improvement was of a permanent nature, but that the wearing surface, which the witnesses stated must be replaced at the end of ten or twelve years, was in the nature of repairs or upkeep, and is a proper charge on the income of the estate. We think the evidence justifies the holding of the court. This was not a voluntary improvement. It was forced upon the estate by operation of law, and hence does not fall under the rule of a voluntary improvement, and since it accrues to the benefit of the remaindermen as well as the life tenant, the cost thereof was properly apportionable between them.

The appellant, however, calls attention to the fact that certain of these improvements were made in front of vacant property, which produces no income, and the costs as to this, she contends, should be charged entirely to the corpus of the estate. But the duty of the life tenant towards nonincome bearing property is the same as it is towards income bearing property. The life tenant takes the estate as he finds it. Whether the estate be controlled by the tenant personally, or

by executors, it is equally the duty of the person having such control to conserve the corpus for the benefit of the remainder-man.   In cases like the one before us, where broad powers as to the management of the property are vested in the executor, it is the duty of the executor to see to it that nonincome bearing property is not carried too long to the detriment of the person entitled to the income.   If there is no reasonable prospect of such property becoming income bearing, it must be disposed of in a reasonable time and the proceeds invested in income bearing property.   But common business prudence must be exercised in this regard; the property should not be unreasonably retained in the hope of gaining unearned increments, nor should it be sacrificed by sales for less than its reasonable value.   In this instance, the devisor expressed a desire that the real property be not sold until five years after her death.   The executrix should give heed to this request. In the meantime, therefore, and such further time as it may reasonably take the executor to reinvest the estate, the taxes, repairs, and all those current and incidental expenses which are fairly incidental to the maintenance of the estate, must be paid from the income.

The court allowed the executrix to pay the costs expended by her in the defense of the case of *Stahl v. Schwartz* out of the income of the estate.   This is the case formerly referred to as appealed to this court and reported in 67 Wash. 25, 120 Pac. 856.   It is the contention of the appellant that the case was defended by the executrix for her own benefit, and that the costs thereof should be charged to her personally, and neither to the corpus of the estate nor to the income.   The action, as will be observed from an inspection of the report cited, was one to set aside a contract entered into between the executrix and the appellant.   This contract was entered into in good faith by the executrix believing that it was to the interest of the estate as well as the parties thereto.   While she might properly have consented to annul it on the appellant's demand, the validity of the contract was debatable, and

if, in the exercise of her best judgment, she concluded that it was to the interest of the estate to make the contest, she should not be punished individually for her mistake of judgment. The rule is to tax the costs of litigation affecting an estate, expended by the executor or administrator in good faith, to the estate, whether the litigation be unsuccessful or not, and we see no reason to depart from the rule in this instance. As the litigation affected the management and not the property of the estate, the cost was properly chargeable against the income.

The inheritance tax due the state of Washington on the death of Catherine E. Stahl, was paid by the executors of the estate from the income during the life of Frank E. Stahl. It is insisted that this sum should be now charged to the corpus of the estate. But this sum was paid out of the income by the executors voluntarily, during the life of Frank H. Stahl, when he with his coexecutor was entitled to the income. It cannot now be recovered by his successor to the income.

The guardians *ad litem* appeal from the orders of the court allowing certain charges to be made against the corpus of the estate. These contentions, with one exception, have been discussed by us in discussing the questions suggested on the appeal of Harriet Stahl, and need not be further noticed here.

The exception noted relates to a house which was repaired by the executrix at a cost of some $4,000. The house in question was constructed of brick many years ago, and was so far dilapidated as to be unfit for habitation. The repairs put thereon practically rebuilt it, changing it from nonincome bearing to income bearing property. The court allowed the costs of the repairs to be charged to the corpus of the estate on the ground that it was an improvement of a permanent nature, and thus an investment of funds in the hands of the executrix. While there is some question in the evidence as to the durability of the structure erected, we agree with the trial court that the reasonable probability is that it will inure to the benefit of the remaindermen. This being so, the expense

was, at least, properly apportionable between the life tenants and the remaindermen, but since the evidence does not disclose any basis upon which to make an apportionment, we will permit the charge to stand as the trial court left it.

Our conclusion is that no substantial error appears in the record, and that the judgment appealed from should be affirmed. It will be so ordered.

Crow, C. J., Parker, Mount, and Morris, JJ., concur.