[No. 32524. Department Two. January 18, 1954.]

*In the Matter of the Estate of* THOMAS I. BROOKS, *Deceased.*
CARL SCHACHT, *Appellant,* v. MYRTLE A. BROOKS, *as Executrix, Respondent.*[1]

*Oluf Johnsen,* for appellant.

*Chas. H. Graves,* for respondent.

FINLEY, J.—This appeal is from an order of the superior court for King county, approving the final account of Myrtle A. Brooks, as executrix of the nonintervention will of her deceased husband, Thomas I. Brooks, and overruling certain objections made by the residuary beneficiary regarding the final report.

The two significant questions in this case, outlined in very simple terms, are: (1) whether the expense (a) of a new roof and (b) of remodeling improvements, incurred during probate (involving a small combination apartment-retail-store building, devised by the decedent), may be

[1]Reported in 265 P. (2d) 833.

apportioned by the executrix between a life tenant and a remainderman; and (2) whether the fees of the nonintervention will executrix and her attorney were fixed by the probate court in a sum so high, in proportion to the services rendered, as to amount to an abuse of discretion. In this opinion, we decide both questions in the negative.

As intimated above, the decedent, among other things, left to his widow, Myrtle A. Brooks, a life estate in a two-story corner building. The will provided that, upon the death of Myrtle A. Brooks, the building was to pass to Carl Schacht, as the remainderman.

Originally, the building had two separate store rooms on the ground floor and an apartment (the widow's living quarters) on the upper floor. The roof needed repairs. Myrtle A. Brooks caused a new roof to be placed on the building, at a cost of $326.52. Also, at a cost of $338, she had a partition removed, and did some minor remodeling of the first floor store space. Prior thereto, the partition had separated the two store rooms. The decedent had rented the smaller of the two store rooms to an old friend for living quarters, at $18.50 per month. As a result of the removal of the partition and the remodeling of the building, rent on the smaller space was increased to $35 a month. The entire ground floor was thereafter occupied and used as a grocery and market, and its rental was increased from $83.50 to $100 per month.

The real property of the estate was appraised at $44,500, and the personal property (including cash in banks) at $31,211.77. In addition to the life-estate interest in the real property, mentioned above, the decedent left the sum of $15,000 cash to his widow, in trust, from which $125 plus accrued interest on the principal was to be paid to her, monthly, during her lifetime, any remaining balance to pass to the residuary beneficiary, Carl Schacht. We note that a substantial portion of the estate was left *directly* to Carl Schacht (a stepson of decedent), and a portion of the real estate was left to Schacht's daughter.

■ Although not specifically required by statute, a final report was filed by Myrtle A. Brooks, the nonintervention executrix. There is no question as to the authority of the probate court to act where a nonintervention executrix has invoked the jurisdiction of the court to approve her final account and to make a final order of distribution. *In re Brown's Estate,* 129 Wash. 84, 224 Pac. 678; *In re Perry's Estate,* 168 Wash. 428, 12 P. (2d) 595.

In an amended final report, the executrix charged against the estate assets of the remainderman one half of the cost of the new roof, and one half of the cost of removing the partition and doing the minor remodeling; she charged the other one half of these costs to herself, as life tenant. The remainderman, Schacht, objected to the charges against his portion of the estate and has assigned error to the trial court's approval thereof.

■ The weight of authority clearly supports the general principles, (a) that a grantee or devisee who accepts the benefits of a life estate must assume the burden or expense of the repairs; and (b) that a life tenant who voluntarily makes permanent improvements cannot apportion the cost thereof between himself and the remainderman. In *Richardson v. McCloskey,* 276 S. W. (Tex. Com. App.) 680, the following statement pertinent to the matter of repairs is found:

"The principle is that one who takes a life estate in the property of a decedent elects to take as a whole with the benefits of the income and profits, and under the corresponding burdens of the current expenses such as taxes, repairs, and other upkeep, viewing the estate as a whole."

In a New York case, *In re Very's Estate,* 24 Misc. Rep. 139, 53 N. Y. S. 389, the court stated:

"Nor can such tenant [who was also executor] make repairs of a permanent character upon the property at the expense of the inheritance. He is bound to make repairs at his own expense. The making of permanent improvements is a voluntary act on his part, which gives no claim on the reversion."

As to the matter of improvements, we refer to 33 Am. Jur. 985, § 457, for a good textual statement on the problem, as follows:

"The general rule is clearly established that compensation for improvements made by a life tenant with full knowledge of his title to the property cannot be recovered from the reversioner or remainderman, either by way of a money judgment or decree or by the assertion of a lien against the property. Various reasons have been announced for the rule, but the ones usually advanced are that the life tenant should not be permitted to consume the interest of the remainderman by making improvements that the remainderman cannot pay for or that he does not desire, and also that improvements are usually made for the immediate benefit of the life estate and without reference to the wishes of the remainderman."

See, also, 128 A. L. R. 255 (Note—Improvements), and 1 American Law of Property 155, § 2.21.

While an exception is usually made as to the cost of street and sewer improvements on the theory that they are imposed by law and may not be characterized as being voluntarily assumed by a life tenant; and while an argument may be made along equitable lines when long-term repairs or permanent improvements have been made, which, reasonably, should result in benefits to a remainderman; nevertheless, we think that the rule supported by the weight of authority (as pointed out hereinbefore) is the better-reasoned, more practical, and more workable one. In this connection, it seems to us that the decision of this court several years ago in *Stahl v. Schwartz,* 81 Wash. 293, 142 Pac. 651, when analyzed quite closely, is in accord with the general rule supported by the great weight of authority in this country, as mentioned heretofore, that the cost of repairs and voluntary improvements must be borne by the life tenant in the absence of consent by a remainderman to be liable therefor.

In the *Stahl* case, *supra,* with reference to certain remodeling expenditures undertaken by two coexecutors (one of whom owned a life tenancy in one half of the estate), we first noted the fact that the life tenant-executor had agreed to

pay these costs from the income of his life estate, and then added:

"There is, moreover, another general rule applicable to . . . the expenditures made to remodel the building mentioned as being remodeled by the executors during the lifetime of Frank H. Stahl [life tenant-executor]. This rule is that a life tenant who makes permanent improvements upon the estate of which he is tenant is presumed to have made them voluntarily. *He is bound to keep the premises in repair, but is under no legal obligation to undertake improvements. If he does so, it is a voluntary act of his own, which gives him no claim against the reversioner for the payment of any part of the cost of the improvement.* Tiedeman, Real Property (2d ed.), § 68." (Italics ours.)

As the *Stahl* case is the only pertinent authority we have found on this question in this state, it is unfortunate that in the opinion there is additional language which, on its face, seems to be inconsistent with the above-quoted passage. With reference to *other improvements than those involved* in the above-quoted passage, the *Stahl* opinion (at p. 305) reads:

"The guardians *ad litem* appeal from the orders of the court allowing certain charges to be made against the corpus of the estate. These contentions, with one exception, have been discussed by us in discussing the questions suggested on the appeal of Harriet Stahl, and need not be further noticed here.

"The exception noted relates to a house which was repaired by the executrix at a cost of some $4,000. The house in question was constructed of brick many years ago, and was so far dilapidated as to be unfit for habitation. The repairs put thereon practically rebuilt it, changing it from nonincome bearing to income bearing property. The court allowed the costs of the repairs to be charged to the corpus of the estate on the ground that it was an improvement of a permanent nature, and thus an investment of funds in the hands of the executrix. While there is some question in the evidence as to the durability of the structure erected, *we agree with the trial court that the reasonable probability is that it will inure to the benefit of the remaindermen. This being so, the expense was, at least, properly apportionable between the life tenants and the remaindermen,* but since the evidence does not disclose any basis upon which to make

an apportionment, we will permit the charge to stand as the trial court left it." (Italics ours.)

However, a review of the facts relative to the last-quoted portion of the *Stahl* case, reveals a situation quite different from that where a life tenant has voluntarily made permanent improvements on property in which he owns ·a life estate. Catherine E. Stahl, after first making certain specific bequests in her will, left one half of her estate absolutely to her daughter and a life estate in the remaining one half to the testatrix' son, with a remainder over to certain minor children. The will provided that, upon the death of the son who held the life tenancy or interest in the property, the remaindermen's one-half interest would be subject to a trust to pay the income therefrom to the son's widow "during her widowhood," or until she should remarry. The son (the life tenant) and the daughter of the testatrix were coexecutors of the will.

The rebuilding of the house referred to in the above-quoted passage was done after the death of the son who was the life tenant and a coexecutor. Thus an executor having a life interest was not involved, and this portion of the *Stahl* case is not factually in point with the instant case. In the instant case, the controversy is between (a) an executrix who owns a life estate in property in which she has made improvements and (b) the remainderman, who objects to being charged for one half the costs of the improvements. Actually, in the *Stahl* case, the controversy was between the beneficiary of income from a trust estate and the owners of the corpus of the estate. A further distinction in the latter case is that the trust beneficiary of the income did not make the improvements in question. The costs, which the court said could properly be apportioned, were incurred by the surviving executrix, who was not a life tenant. On the basis of the foregoing analysis, we do not think, as indicated heretofore, that the *Stahl* case can be cited in support of the proposition that a life tenant who is an executor of an estate may voluntarily make improvements to the estate and then

apportion the costs thereof between himself and his remainderman.

 Appellant raises a question as to the attorney's fees in the sum of $4,500, and the executrix' fee in the sum of $2,500, as approved by the trial court. These fees appear to us to be reasonable, considering all of the circumstances involved in this case, and we will not disturb the discretion exercised by the trial court in approving and allowing such fees.

As to the apportionment of one half of the cost of the roof and one half of the cost for remodeling the first floor of the building, we think the trial court erred. In that respect, the action of the trial court is reversed. In all other respects, the trial court is affirmed.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and DONWORTH, JJ., concur.