[No. 38015-0-I.   Division One.   August 25, 1997.]

*In the Matter of the Estate of* GEORGE ROBERT CAMPBELL.

JUDITH A. RICHARDSON, ET AL., *Appellants*, v. WILMA J. CAMPBELL, *Respondent.*

*Michael J. Warren* and *Warren & Duggan, P.L.L.C.*, for appellants.

*William L. Hanson*, for respondent.

KENNEDY, A.C.J. — George Campbell died in 1994, leaving his wife Wilma a life estate in the family home with the remainder over to his six adult children from a previous marriage. The will provided that Wilma was to have undisturbed possession of the property so long as she wished to live there, and required the children to pay all expenses associated with the life estate property. The children appeal the trial court's rulings that Wilma's life estate continues until her death, even if she chooses not to

live on the property, and that the provision requiring the children to pay property expenses is valid and enforceable. The children contend that the trial court failed to give effect to every part of the will in determining the testator's intent, and that, as a matter of law, remaindermen cannot be required to pay property expenses of a life estate. We reject both of these contentions and affirm.

## FACTS

George Campbell executed his will in September of 1994. He left the majority of his assets, including real property in Grays Harbor, Washington, and all interest in community property, to his wife of 13 years, Wilma. George also gave Wilma a life estate in the family home, with the remainder over to his six children from a previous marriage:

I leave to my wife, WILMA J. CAMPBELL, if she survives me, the following:

. . . .

4. All interest in community property, acquired by us during our marriage.

5. A life estate in our residence property of approximately 4.7 acres, 15234 Tiger Mt. Rd. SE, Issaquah, King County Tax Acct. No. 242306-9091, including all furniture and furnishings, whether separate or community.

Because there is potential for disagreement between my wife and my children, I wish to make the following provisions regarding the life estate:

A. I wish my wife to have undisturbed possession of the house and land, including all my tools and equipment, our furniture and furnishings, *so long as she wishes to live there.*

B. I give my wife the option, *if she is unable or does not desire to remain on the property,* to require payment from my children of 1/3 of the value of our house and its lot of one acre. The value is to be extablished [*sic*] by appraisal, if necessary, with my wife and my children jointly to each select

one appraiser and those two a third. I give my wife the option to take 1/3 of the assessed value of the buildings and 1/4 of the assessed value of the land, if she so desires. If my children fail to pay my wife the property shall be sold and the receipts divided.

(Emphasis added.) With respect to the life estate, the will required that "[a]ll property expenses, except utilities, including maintenance and repair, taxes, [and] insurance on buildings," be paid by the children, and that any expenses not paid equally by the children be reimbursed to the payor with interest at the legal rate. Wilma Campbell and George's daughter Judith Richardson were named as co-executrices of the estate.

George Campbell died in October of 1994 and his will was admitted to probate in November of 1994. The children filed a petition seeking judicial determination of the parties' rights and obligations under the will, contending, inter alia, that the terms of the will regarding the life estate were ambiguous. At a bench trial held in September of 1995, the children argued that paragraphs 5(A) and (B) of the will demonstrated that George intended to end Wilma's life estate at the earlier of her death or when she moved out of the family home. In support, the children offered co-executrix Judith Richardson's testimony that this was her belief as to meaning of the terms of the will. Wilma testified at trial that she and George had spoken frequently about his estate in the months preceding his death, and that she believed he wanted her to live in the family home as long as she liked, but that she was uncertain whether George intended to terminate the life estate if Wilma were to move from the family home.

The trial court construed the will in favor of Wilma, ruling that her life estate would not automatically terminate if she were to vacate the property. Instead, the court ruled, Wilma's life estate would continue throughout her lifetime, even if she moved and rented out the life estate property, and would terminate upon the earlier of her death or her exercise of the payout option, which she

could do at any time during her lifetime even if she had earlier moved out of the home. The court also ruled that Wilma had a life estate in any noncommunity furniture, furnishings, tools or equipment, but ruled that unlike her life estate in the real property, her life estate in the non-community personal property would terminate upon the earlier or her death or her election to move out of the home. Finally, the court ruled that the provision of the will requiring the children to pay costs associated with the life estate property was valid and enforceable.

The children appeal.

## DISCUSSION

### I

The children first contend that the trial court erred in ruling that Wilma's life estate continues until her death, regardless of whether she vacates the property. They contend that the will provides that Wilma's life estate terminates if she should move from the family home and that the payout option must be exercised within a reasonable time following the move, or be forever lost.

■■■ The purpose and duty of the court in construing a will is to give effect to the testator's intent. RCW 11.12.230 (all courts shall have due regard to the direction of the will and the true intent and meaning of the testator); *In re Estate of Smith*, 40 Wn. App. 790, 793, 700 P.2d 1181 (1985) (citing *In re Estate of Bergau*, 103 Wn.2d 431, 435, 693 P.2d 703 (1985)). "When construing a will, courts must give effect to the testator's intent as of the time of the will's execution. This intent should, if possible, be garnered from the language of the will itself. The will should be considered in its entirety and effect given to every part." *In re Estate of Price*, 73 Wn. App. 745, 754, 871 P.2d 1079 (1994) (citing *Bergau*, 103 Wn.2d at 435-36).

■■ The rule is well established that the holder of a life estate created by will is entitled to all income derived

from the estate during his or her tenancy unless the enjoyment of the life estate is specifically limited in terms as clear and decisive as those granting the life estate. *In re Douglas' Estate*, 65 Wn.2d 495, 498-99, 398 P.2d 7 (1965). This includes the right to sublease the life estate property and collect rents:

> The principle is well settled that a life tenant who is the holder of a present estate for life in real property is entitled to the possession and use of the property . . . . Closely associated in legal theory with the life tenant's right of possession is his right to the issues and profits of realty during the duration of the life estate, and his analogous right to the rents received as income from letting possession of the property, for a consideration, to some person.

51 AM. JUR. 2D, *Life Tenants and Remaindermen* § 32, at 256 (1970) (footnotes omitted). "[A]n estate . . . given in one part of a will in clear and decisive terms . . . will not be taken away or cut down by doubtful language of a subsequent clause, but only by positive provision in words as clear and decisive as those which created the estate." *Douglas*, 65 Wn.2d at 499 (citations omitted). "[T]he intention which controls is that which is positive and direct, not that which is merely negative or inferential." *Id.* (citation omitted).

Applying these rules, we reject the appellants' contentions that the will terminates Wilma's life estate if she should move from the property and that the will requires Wilma to exercise her option to sell the life estate within a reasonable time after moving, or lose that choice entirely. The will grants Wilma a life estate and a payout option in clear and decisive terms, and contains no affirmative limitation in words as clear and decisive as those which created the estate and the option upon her enjoyment of the life estate or upon her exercise of the payout option. As conceded by the children at oral argument for this appeal, as used in the will the word "option" merely means "choice." Accordingly, Wilma may, if she wishes, move from the property, rent it out and enjoy the income,

and exercise the payout option if, as and when she might desire to do so, at any time during her lifetime.

█ We also reject the children's contention that the trial court's refusal to find a limitation on Wilma's life estate from the phrases "so long as she wishes to live there" (paragraph 5(A)) and "if she is unable or does not desire to remain on the property" (paragraph 5(B)) rendered that language meaningless and violated the rule of will construction that courts are to give effect to every part of a will. The trial court found that this language evidenced the testator's intent to limit Wilma's life estate in George's separately owned personal property, not his real property. We agree with this interpretation. As long as Wilma desires to live on the property, she will likely need the tools and equipment for its upkeep, and George clearly evidenced his intent that Wilma's household not be disrupted by the removal of furniture while she chose to live there. George was obviously aware of the potential for contention between Wilma and the children. Because he left Wilma, outright, in paragraph 4, all interest in community property, the life estate in furniture can refer only to his separate furnishings acquired during his prior marriage to the children's mother, not to community furniture acquired during George and Wilma's marriage. If Wilma should choose to move from the property, the will sensibly provides that the children will be entitled to the furniture that was owned by George and their deceased mother, as well as George's separately owned tools and equipment. There was thus a valid basis for George's decision to treat the tools and furniture different from the real estate, in terms of Wilma's use and enjoyment while she lives on the property, and the trial court did not err in construing the will.[1]

---

[1] We reject the children's contention, raised in this court for the first time at oral argument, that the "house and one acre" language in the option clause be construed to mean "house and *4.7 acres*." We also reject the suggestion in Wilma's brief that we impose a constructive trust on 25 acres of land left to the children by the will to enforce their obligation to pay the costs of the life estate

## II

The children also contend that the portion of the will requiring them to pay all expenses associated with the life estate property is unenforceable as a matter of law. The will provided that the children were to pay the expenses equally, with any expenses not divided equally to be reimbursed to the payor with interest at the legal rate. The trial court found that the children's remainder interest in the life estate property had sufficient value to secure their maintenance obligations. The children do not contest that George intended them to make the payments; instead, they contend that a will cannot impose financial obligations upon heirs without their consent, arguing that it is tantamount to creating a contract based on an offer but no acceptance. We disagree.

In determining whether a legal life tenant or the remaindermen must assume the duty of insuring property or paying the cost thereof, the intention of the creator of the interest, if indicated, will control. 51 AM. JUR. 2D, *Life Tenants and Remaindermen* § 243, at 524 (1970). Thus, "it is within the power of the creator of interests in property to place the duty of payment of taxes upon the holder of either present or future interest[.]" *Id.* § 246, at 529. *See also* A.M. Swarthout, Annotation, *Rights, Duties, and Liabilities of Life Tenant (Legal or Equitable) and Remaindermen in Respect of Property Insurance or Proceeds Thereof*, 126 A.L.R. 336, 337 (1940).

In accordance with this principle, courts from other states have recognized that where a will explicitly so provides, the costs of maintaining life estate property may properly be charged to the remaindermen. *See, e.g., In re Estate of Mills*, 148 Misc. 224, 266 N.Y.S. 478, 480-81 (1933); *Hill v. Hill*, 623 S.W.2d 779, 781 (Tex. App. 1981). Although this apparently is an issue of first impression in Washington, we

---

property. The trial court considered and rejected both of these contentions. Because neither of those rulings has been appealed, they are the law of the case. RAP 10.3(g); *Detonics .45 Assocs. v. Bank of Cal.*, 97 Wn.2d 351, 353, 644 P.2d 1170 (1982) (trial court's unappealed rulings are the law of the case).

find no indication in Washington law that a different rule would apply. Indeed, courts must give effect to any lawful intent of the testator, regardless of the reasonableness of conditions imposed. *Peck v. Peck*, 76 Wash. 548, 552, 137 P. 137 (1913). Moreover, a will provision requiring that remaindermen shall pay the expenses of the life estate is not materially different from the statutory provision that devisees of mortgaged property take the property subject to the mortgage, unless the will otherwise provides. *See* RCW 11.12.070. In both situations, obligations created by testators become the obligation of devisees, to the extent of the value of the inherited property, upon acceptance of the inheritance. *Cf. Higgenbotham v. Topel*, 9 Wn. App. 254, 257, 511 P.2d 1365 (1973) (devisee of wheatland took title burdened by leases lawfully created by executor where devisee did not reject bequest; devisee liable under lease to extent of value of the inheritance). Because the language of the will in this case clearly indicates George's intent to require the children to pay the cost of the upkeep of the life estate property, and because the children did not reject the bequest of the remainder estate, they are liable for the costs of maintaining the property, to the extent of the value of their respective inheritances. The trial court found that the value of the remainder estate was sufficient to secure the expenses.

Affirmed.

GROSSE and AGID, JJ., concur.