# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Estate of: | No. 51576-8-II |
| GERALD IRWIN SR., | PUBLISHED OPINION |
| Deceased. | |

GLASGOW, J. — In his will, Gerald Irwin Sr. left Barbara Kelley a life estate in real property that was still encumbered by a mortgage. He left the residue of his estate to his two children, divided evenly between them. The trial court ruled that Kelley was responsible for paying the mortgage during her life estate.

Kelley appeals, arguing that she is not "the devisee" and so is not responsible for the mortgage under RCW 11.12.070, that Irwin Sr. did not intend for her to pay more than the taxes and insurance on the real property, and that under common law principles, life tenants are generally not liable for mortgages on property in which they receive a life estate. Irwin Sr.'s children argue that the invited error doctrine prohibits Kelley from appealing the trial court's order.

We hold that the invited error doctrine does not apply to this case. We also hold that Kelley is responsible for paying the mortgage during her life estate, and we affirm the trial court.

FACTS

Irwin Sr. executed his will on November 16, 2016. He named Kelley as personal representative of his estate. In the will he also granted Kelley a life estate in real property "provided she pays the taxes and insurance on the property." Clerk's Papers (CP) at 3. Irwin Sr. devised the residue of his estate evenly between his two children, Gerald Irwin Jr. and Barbara Irwin. The will was silent on the mortgage that still encumbered the property at the time of Irwin Sr.'s death.

Irwin Sr. died in January 2017. Relevant to this appeal, the Irwins argued that Kelley, as the life tenant, was personally responsible for the mortgage. The trial court agreed with the Irwins in its letter ruling, ordering Kelley to personally make monthly payments on the mortgage during her life tenancy. The parties then jointly presented a stipulated order memorializing the court's letter ruling.

Kelley appeals.

ANALYSIS

I. INVITED ERROR

As an initial matter, Barbara Irwin[1] argues that Kelley invited the error she now complains about because she stipulated to entry of the trial court's order following its letter ruling. Irwin asks us to invoke judicial estoppel and reject Kelley's appeal. We disagree and decline Irwin's request.

The invited error doctrine prohibits a party from setting up an error at trial and then complaining of it on appeal. *State v. Momah*, 167 Wn.2d 140, 153, 217 P.3d 321 (2009). But as Kelley points out, she did not stipulate to the merits of the trial court's order, but simply affirmed that the final order accurately reflected and formalized the court's letter ruling. The invited error

---

[1] Only Barbara Irwin is a party to this appeal.

doctrine does not apply in this case because Kelley did not stipulate to the merits of the court's ruling.

## II. IRWIN SR.'S WILL

Kelley argues the trial court erred in ruling that she is responsible for paying the mortgage on the property. Kelley contends that the Irwins, as residuary fee simple devisees, should be liable for the mortgage. We disagree.

A.    Standard of Review and Principles of Will Interpretation

We review a trial court's interpretation of a will de novo, with the goal of ascertaining the testator's intent. *In re Estate of Burks*, 124 Wn. App. 327, 331, 100 P.3d 328 (2004); RCW 11.12.230. If possible, this intent must be determined from the four corners of the will. *Id.* "'[T]he intention which controls is that which is positive and direct, not that which is merely negative or inferential.'" *In re Estate of Campbell*, 87 Wn. App. 506, 511, 942 P.2d 1008 (1997) (quoting *In re Douglas' Estate*, 65 Wn.2d 495, 499, 398 P.2d 7 (1965)).

The testator is presumed to have known the law at the time of execution of his will. *In the Matter of Estate of Mell*, 105 Wn.2d 518, 524, 716 P.2d 836 (1986). The testator is also presumed to be familiar with the "'surrounding circumstances'" that could affect the will's construction. *In re Estate of Price*, 73 Wn. App. 745, 754, 871 P.2d 1079 (1994) (quoting *In re Estate of Bergau*, 103 Wn.2d 431, 436, 693 P.2d 703 (1985)).

As a general rule, unless the will expressly provides otherwise, "'one who takes a life estate in the property of a decedent elects to take as a whole with the benefits of the income and profits, and under the corresponding burdens of the current expenses such as taxes, repairs, and other upkeep, viewing the estate as a whole.'" *In re Brooks' Estate*, 44 Wn.2d 96, 98, 265 P.2d 833 (1954) (quoting *Richardson v. McCloskey*, 276 S.W. 680, 685 (Tex. Com. App. 1925)); *see also*

*Estate of Campbell*, 87 Wn. App. at 513 (costs of maintaining a life estate may be charged to remainderman "where a will explicitly so provides."). A devisee who accepts the benefits of a life estate must assume the burden or expense of the repairs, and a life tenant who voluntarily makes permanent improvements, for example, cannot apportion the cost between themselves and the residual devisees. *Id*.

B.    Under RCW 11.12.070, Kelley Is Responsible for Paying the Mortgage Payments as the Devisee

In addition to case law establishing that the holder of a life estate is generally responsible for the costs of maintaining the property during the life estate, RCW 11.12.070 provides that "[w]hen any real or personal property subject to a mortgage is specifically devised, the devisee shall take such property so devised subject to such mortgage unless the will provides that such mortgage be otherwise paid." We agree with the trial court that under this statute, Kelley is the devisee, and because Irwin Sr.'s will did not explicitly provide for the payment of the mortgage, Kelley is responsible for paying the mortgage during her life estate.

The term "devisee" is not defined in the statute. *Black's Law Dictionary* 548 (10th ed. 2014) defines "devisee" as "[a] recipient of property by will." *Black*'s defines the separate term "residuary devisee" as "[t]he person named in a will to receive the testator's remaining property after the other devises are distributed." Thus there does not appear to be any limitation on the term "devisee" that would make it inapplicable to life tenants.

Further, RCW 11.12.070 applies to property that is "specifically devised." The will granted Kelley a life estate as a "specific bequest." CP at 3. In contrast, the remaining fee simple interest goes to the Irwins as part of the overall residual estate that is divided evenly between them. This distinction also supports the conclusion that Kelley is the devisee and is responsible for paying the mortgage during her life estate under RCW 11.12.070.

Kelley advances several arguments as to why she, as the life tenant, should not be considered the devisee under RCW 11.12.070. All fail.

Kelley first argues that her life estate cannot exist at all without a remainder—in this case the Irwins' fee simple interest—and so upon Irwin Sr.'s death, the Irwins' interest vested *before* Kelley's. Therefore, she contends, the Irwins should be considered "the devisee" for the purposes of RCW 11.12.070. She also cites to *Shufeldt v. Shufeldt*, 130 Wash. 253, 262, 227 P. 6 (1924), which explained that where there is no contingency as to the person entitled to the remainder, the remainder vests when the will goes into effect.

Kelley focuses on the Irwins' property interest while ignoring her own. As a life tenant, Kelley is the first person entitled to possessory interest in the property even if she does not hold a fee simple interest in the property. Kelley does not provide any convincing authority for her claim that a party receiving a life estate cannot be considered a devisee simply because she is not a fee simple owner of the property. There is nothing in the language of RCW 11.12.070 or in the dictionary definition of "devisee" that suggests such a limitation. A "recipient" of property would include a person, such as a life tenant, who receives only a possessory interest in the property. BLACK'S LAW DICTIONARY 1461 (10th ed. 2014).

Kelley also argues that requiring her to pay the mortgage on her own testamentary gift, the life estate, is a "strained consequence" that should be avoided in interpreting RCW 11.12.070. Br. of Appellant at 14-15; *Wright v. Engum*, 124 Wn.2d 343, 351, 878 P.2d 1198 (1994). But a devisee is entitled to avoid a burden, including a payment obligation, by rejecting the bequest. *Higgenbotham v. Topel*, 9 Wn. App. 254, 256-57, 511 P.2d 1365 (1973). In addition, one could just as easily argue that it would be a "strained consequence" for the residual devisees to have to pay the mortgage on their own testamentary gift where they do not yet have possessory interest in

the property, particularly in light of the principles articulated in *Brooks' Estate* and *Estate of Campbell.* A life tenant accepts all of the benefits and burdens of the property and those with a remaining interest cannot be made responsible for the costs of maintaining life estate property absent an explicit provision in the will. *Brooks' Estate*, 44 Wn.2d at 98; *Estate of Campbell*, 87 Wn. App. at 513-14. The Irwins will be burdened with mortgage and maintenance costs upon termination of the life estate when they take possession of the property.

Finally, Kelley argues that RCW 11.12.070 is a derogation of this common law and should be strictly construed, citing *McNeal v. Allen*, 95 Wn.2d 265, 269, 621 P.2d 1285 (1980) and RCW 4.04.010. Kelley would strictly construe "devisee" to exclude life tenants. *Brooks' Estate* says the opposite, however, holding that a life tenant takes the life estate along with all the benefits and burdens of the property, viewing the estate as a whole, unless otherwise provided in the will. 44 Wn.2d at 98. *Brooks' Estate* was decided the year before RCW 11.12.070 was adopted and remains consistent with the plain language of the statute obligating the devisee to assume responsibility for any mortgage absent contrary language in the will. Kelley also relies on *In re Cloninger's Estate*, 8 Wn.2d 348, 112 P.2d 139 (1941), but that court addressed statutory language not at issue here. *Id.* at 349-51; REM. REV. STAT. § 1401 (1860).

Kelley also contends that under the common law, life tenant devisees should "have no obligation to pay the principal debt secured by a mortgage because it would be inequitable to make someone pay for property in which he or she is not accumulating equity." Reply Br. of Appellant at 15. This proposition has held sway in other states, which have adopted the rule that unless the creator of the life estate has otherwise provided, the life tenant must pay interest on the mortgage but is under no obligation to pay off the principal of an encumbrance on the property. 31 C.J.S. ESTATES § 58; *see also* 51 AM. JUR. 2d, Life Tenants and Remaindermen § 294; *Draper v. Sewell*,

6

263 Ala. 250, 253, 82 So. 2d 303 (1955); *Tyler v. Bier*, 88 Or. 430, 434, 172 P. 112 (1918); *Currier v. Teske*, 93 Neb. 7, 13, 139 N.W. 622 (1913). Under this rule, a life tenant who does pay off the principal generally is entitled to contribution from the residual fee simple owners. 31 C.J.S. ESTATES § 58.

However, Kelley does not direct us toward any source suggesting that Washington courts subscribe to this principle. Rather under Washington law, life tenants accept a life estate with all the corresponding burdens associated with the property, viewing the estate as a whole. *Brooks' Estate*, 44 Wn.2d at 98. And in Washington, the duty of a life tenant not to permit waste includes a duty to pay mortgage debt payments. 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE § 1.27, at 53 (2d ed. 2004); *see also* RCW 64.12.020; *McDowell v. Beckham*, 72 Wash. 224, 232, 130 P. 350 (1913). Thus, Kelley's arguments fail to change our reading of RCW 11.12.070.

For these reasons, we agree with the trial court that Kelley is "the devisee" under RCW 11.12.070, and so takes her life estate subject to the mortgage. If Kelley does not wish to undertake this burden, she can reject the bequest.

C.     Washington Courts Will Not Draw Negative Inferences from the Will

Alternatively, Kelley contends that Irwin Sr.'s will provided that his children must pay the mortgage. Kelley relies on language in the will that provided that Kelley receives a life estate "provided she pays the taxes and insurance on the property." CP at 3. Kelley argues that Irwin Sr.'s intent was clear: Kelley must pay taxes and insurance, and nothing else. However, Kelley ignores the principle that Irwin Sr. is presumed to have known the law at the time he executed his will. *Estate of Mell*, 105 Wn.2d at 524.

7

In *Estate of Campbell*, the court rejected the type of negative inference that Kelley asks us to draw here. 87 Wn. App. at 513-14. In that case, the testator's will gave his wife a life estate that included "undisturbed possession of the house and land . . . *so long as she wishes to live there.*" *Id.* at 508. Campbell's children were entitled to the remainder. *Id.* They argued that the language in the will indicated an intent to terminate the life estate if Campbell's wife vacated the property. *Id.* at 510. But under the law, absent a contrary statement in the will, a holder of a life estate was entitled to sublease and collect rents during the pendency of the life estate even if she did not live on the property. *Id.* at 511. The court declined to infer from the will's language that Campbell's wife's life estate would terminate should she move from the property, explaining that the intention that controls "'is that which is positive and direct, not that which is merely negative or inferential.'" *See id.* at 511-12 (quoting *Douglas' Estate*, 65 Wn.2d at 499). Absent a clear statement to the contrary, existing law controls.

Here, Kelley asks us to infer that Irwin did not intend for her to pay the mortgage because he said that her life estate was conditioned on her paying taxes and insurance on the property. But like in *Estate of Campbell*, Kelley is asking us to draw a negative inference. We follow the reasoning in *Estate of Campbell* and decline to do so.

### III. ATTORNEY FEES

Both Kelley and Irwin request attorney fees on appeal under RAP 18.1 and RCW 11.96A.150. Both parties ask that we either award them attorney fees for work their attorneys performed below or remand for the trial court to award attorney fees, even though they apparently did not request attorney fees before the trial court.

While we have discretion under RCW 11.96A.150 to award fees to any party, we decline to grant attorney fees for work done in the trial court or remand for the trial court to award fees where neither party sought fees below. Nor do we grant attorney fees on appeal.

CONCLUSION

Under RCW 11.12.070, Kelley is a specific devisee and is therefore responsible for paying the mortgage during her life estate. Irwin Sr.'s will did not expressly provide otherwise. And Washington common law supports, rather than undermines, this conclusion. We affirm. We decline to impose attorney fees.

_____
Glasgow, J.

We concur:

_____
Melnick, P.J.

_____
Sutton, J.